**F I L E D**

PUBLISH

**AUG 21 1998**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 96-1548

WALTER SCOT BOIGEGRAIN,

Defendant - Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 96-CR-233-N)

Submitted on the briefs:[*]

Richard Byron Peddie and Catherine A. Hance, Frascona, Joiner & Goodman, P.C., Boulder, Colorado, for Defendant-Appellant.

Henry L. Solano, United States Attorney, and Charlotte J. Mapes, Assistant United States Attorney, District of Colorado, Denver, Colorado, for Plaintiff-Appellee.

Before **PORFILIO**, **HOLLOWAY**, and **TACHA**, Circuit Judges.

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

**TACHA**, Circuit Judge.

This appeal invites us to resolve two constitutional questions regarding the relationship between an attorney and a potentially incompetent client in a criminal case. First, we must determine whether a client who may be incompetent to stand trial has a constitutional right to waive his counsel before a hearing on his competency. The second issue presented is whether counsel who moves for an evaluation of the defendant's competency against the defendant's wishes thereby renders ineffective assistance of counsel. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we answer both questions in the negative.

## I.

The defendant was charged with two counts of threatening a federal law enforcement officer and his family, in violation of 18 U.S.C. § 115(a)(1)(B). His arraignment was scheduled for June 7, 1996, and from that point the parties have taken a somewhat tortuous course to this appeal.

The arraignment was continued until June 14, 1996, to allow David Conner, the public defender representing the defendant, to familiarize himself with the case. At that time, the defendant pleaded not guilty and advised the court that if he could retain private counsel, he would like to replace Mr. Conner. The Magistrate assured the defendant that he had that option open to him.

On June 20, the day of a scheduled discovery conference, the defendant filed a "Notice of Dismissal of U.S. Federal Public Defender Mr. David Conner and Notice of Stay of Proceedings Pending Procurement of Other Counsel."  The presiding Magistrate agreed to delay the discovery conference for one week, until June 28, 1996, to allow the defendant to retain counsel.  The Magistrate, however, did not release the public defender from the case.

The record does not reflect whether the conference scheduled for June 28 ever occurred.  Regardless, the defendant did not procure private counsel but continued, throughout the proceedings, to file motions on his own behalf rather than through his lawyer.  On July 8, Mr. Conner moved for a determination of the defendant's competency to stand trial.[1]  On the basis of that unopposed motion,

---

[1]Determining whether an accused is competent to stand trial is a three step process. See generally Deters v. United States, 143 F.3d 577, 579-80 (10th Cir. 1998) (reviewing the process).  First, if there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent," the court may order a psychiatric or psychological examination of the defendant.  18 U.S.C. § 4241(a).  At the second stage, the court uses the psychological report and conducts a hearing to determine whether the defendant is competent.  If the defendant is not found to be competent, the court must order the defendant hospitalized for up to four months to determine whether the defendant will become competent in the foreseeable future.  The court may order additional hospitalization if it finds there is a substantial probability that within the additional time, the defendant will become competent. See id. § 4241(d).  At the third stage, after the specified period of confinement has expired, the court determines whether the defendant is competent and thus ready to stand trial.  If still found not to be competent, the defendant must be released unless the court finds that he presents a substantial risk of harm to others. See id. §§ 4241(d), 4246; United States v. Steil, 916 F.2d 485, 486-87 (8th Cir. 1990).

the court appointed a psychiatrist to examine the defendant and scheduled a hearing on the defendant's competency for October 18. The defendant missed his appointment with the court-appointed psychiatrist, which triggered a motion by the government to have the defendant committed for the purpose of conducting the preliminary evaluation. See 18 U.S.C. § 4247(b) (stating that for the purpose of conducting an examination pursuant to § 4241(b), "the court may commit the person to be examined for a reasonable period"). The court granted the government's motion. The defendant was confined until the psychiatric evaluation was completed.

The district court rescheduled the hearing on the defendant's competency for November 8, 1996, but the defendant did not appear. After the defendant was arrested and his bond revoked, the competency hearing finally took place on December 6, 1996. There, the district court explained why he had not yet ruled on the defendant's motion to excuse Mr. Connor:

> I have not ruled on that motion deliberately . . . I am aware, of course, that under applicable precedent of the United States Supreme Court, a defendant in a criminal case has the right to waive his Sixth Amendment right to counsel and proceed to represent himself. However, in order for that to happen, the Court must find a knowing, intelligent, voluntary waiver of the right to counsel.
> . . . I have not ruled on the motion because I do not think that one can determine whether a person is competent to waive counsel until you can make a determination as to whether Mr. Boigegrain is competent to stand trial.

R.O.A. vol. 11 at 2-3. The court found Mr. Boigegrain incompetent to stand trial and ordered him committed for a period not to exceed four months, pursuant to 18 U.S.C. § 4241(d).

The defendant filed his appeal from that order on December 19, 1996. Counsel for the defendant moved to withdraw the appeal on the basis that this court had no jurisdiction because there was no final order issued. The en banc court found that we have jurisdiction over appeals from section 4241(d) commitment orders. See United States v. Boigegrain, 122 F.3d 1345, 1349 (10th Cir. 1997) (en banc) (per curiam) (overruling United States v. Cheama, 730 F.2d 1383 (10th Cir. 1984)). The court then ordered briefing on the merits, which are before this panel now.

After the parties submitted briefs on the merits, at the defendant's request we granted a limited remand so that the district court could make new findings on the defendant's competency, and if appropriate enter a plea agreement.[2] The district court found the defendant competent and accepted the defendant's guilty plea. The government then filed a motion to dismiss this appeal for mootness. We took that motion under advisement and address it first.

---

[2]Defendant spent approximately four months at the federal medical center and then was released after experts determined that he had been restored to competence.

## II.

The government argues that the case is now moot because Mr. Boigegrain has pleaded guilty to the charge. We disagree. Mr. Boigegrain is appealing the district court's order, pursuant to 18 U.S.C. § 4241(d), which found him incompetent to stand trial and ordered him committed to the custody of the Attorney General for a period not to exceed four months. In the defendant's first appeal of that order, we addressed the mootness question:

> Although the defendant's commitment has concluded, there is no question that a justiciable case or controversy is presented that will not be mooted by his release. Because commitments ordered pursuant to § 4241(d) will often be concluded before the appellate process is complete, the issue presented here is "'capable of repetition, yet evading review.'"

Boigegrain, 122 F.3d at 1347 n.1 (quoting United States v. Gunderson, 978 F.2d 580, 581 n.1 (10th Cir. 1992)). Because the defendant is appealing his commitment pursuant to section 4241(d), it is his release from that commitment, if anything, that would moot this appeal. The fact that he entered into a plea agreement has no impact on the completely separate commitment issue. Cf. Boigegrain, 122 F.3d at 1349 (finding a commitment order under section 4241(d) to be "completely separate from the merits of the action"). We are governed by the law of the case as stated in the previous opinion. Mr. Boigegrain's appeal is not moot.

## III.

A.

The defendant raises three issues on appeal. First, he contends that the proceedings in this case violated his right to waive his counsel and to represent himself. We review the district court's finding of historical facts for clear error. See, e.g., United States v. Robertson, 45 F.3d 1423, 1430 (10th Cir. 1995). We review de novo, however, the ultimate question of whether a constitutional violation took place. See United States v. Taylor, 113 F.3d 1136, 1140 (10th Cir. 1997).

Criminal defendants have a constitutional right, rooted in the Sixth Amendment, to conduct their own defense. See Faretta v. California, 422 U.S. 806 (1975). Thus, a lawyer cannot be forced upon a defendant who wishes to act as his own representative, even if self-representation would be detrimental to the defendant. See id. at 834. In this case, the defendant moved to dismiss the public defender in June of 1996. The district court did not rule on the motion for over five months, during which time the public defender raised the competency issue and did not argue, as the defendant apparently wished him to, that the defendant was competent to stand trial. The defendant argues that the delayed resolution of his motion and his lawyer's taking a position contrary to his own denied him the right to waive counsel and represent himself.

An accused who forgoes the assistance of counsel surrenders substantial

benefits. Therefore, "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." Id. at 835 (quoting Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938)); see also United States v. Baker, 84 F.3d 1263, 1264 (10th Cir. 1996). The defendant's decision to waive counsel must be knowing, voluntary, and *competent* before it can be recognized. See Faretta, 422 U.S. at 835; Godinez v. Moran, 509 U.S. 389, 399-400 (1993) ("[A] defendant choosing self-representation must do so 'competently and intelligently' . . . .") (quoting Faretta, 422 U.S. at 835). The district court had a duty to ensure that the defendant was choosing self-representation in an informed manner before allowing him to proceed on his own.

Here, the court waited to rule on the defendant's motion to dismiss the public defender until the issue of the defendant's competency to stand trial had been resolved. That was the most appropriate course because "[l]ogically, the trial court cannot simultaneously question a defendant's mental competence to stand trial and at one and the same time be convinced that the defendant has knowingly and intelligently waived his right to counsel." United States v. Purnett, 910 F.2d 51, 55 (2d Cir. 1990). Although that common sense statement almost resolves this matter on its own, a more recent case from the Supreme Court, Godinez v. Moran, 509 U.S. 389 (1993), clarifies it completely.

In Godinez, the Court held that the degree of competence necessary to waive the right to counsel is identical to the degree of competence necessary to stand trial. See id. at 399-400. Therefore, it was impossible for the district court to allow the defendant to waive counsel before determining whether he was competent to stand trial. Before resolving the first question, the court had to resolve the second.

Furthermore, even if a six-month delay in disposing of a defendant's motion would effectively deny the defendant the right to waive counsel—a question that we need not, and do not, resolve here—the delay in this case was not attributable to the district court. The district court originally scheduled the competency hearing for October. The time-consuming complications were the defendant's failure to attend his meeting with the psychiatrist and his failure to appear at the rescheduled competency hearing in November.

B.

The defendant also argues that he received ineffective assistance of counsel from the public defender, David Conner. The defendant argues that Mr. Conner abandoned his role as the defendant's advocate and therefore rendered ineffective assistance of counsel by raising the competency issue against the defendant's wishes.

"Ineffective assistance of counsel claims should be brought in collateral

proceedings, not on direct appeal." United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).  We are reluctant to hear claims of ineffective assistance advanced for the first time in this court because we work at a distinct disadvantage when we operate without the factual development and judicial reasoning afforded by lower court proceedings.  See id. (discussing Beaulieu v. United States, 930 F.2d 805, 806-07 (10th Cir. 1991) (overruled on other grounds by Galloway, 56 F.3d at 1241)).  Therefore, only in the very rare instance that a claim of ineffective assistance is fully developed in the record will we hear it for the first time on appeal.  See Galloway, 56 F.3d at 1242.

Normally, we require criminal defendants alleging ineffective assistance of counsel to obtain a ruling by a district court on their argument by way of a motion pursuant to 28 U.S.C. § 2255.  See, e.g., id.; United States v. Yates, 22 F.3d 981, 985-86 (10th Cir. 1994).  An individual in Mr. Boigegrain's position, however, cannot file such a motion.  Section 2255 allows "[a] prisoner in custody under sentence" to argue that his sentence was imposed in violation of the Constitution.  See 28 U.S.C. § 2255.  A defendant temporarily committed pursuant to section 4241(d) is neither a prisoner nor under sentence; after being found incompetent to stand trial, he is held in the custody of the attorney general as an accused rather than a criminal offender.

Persons being held because they have been found mentally incompetent

can file petitions for writs of habeas corpus instead of motions under section 2255.  See 3 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 591 (2d ed. 1982); O'Beirne v. Overholser, 287 F.2d 133, 136 (D.C. Cir. 1960); Hill v. United States, 206 F.2d 204, 207 (6th Cir. 1953).  If that course were open to the defendant, we would await a lower court ruling on a habeas petition before reaching the merits.  In this case, however, the defendant cannot file a habeas corpus action.  A writ of habeas corpus cannot be issued unless the person requesting it is under "restraint," see 28 U.S.C. § 2241(a), and Mr. Boigegrain has long since been released from his commitment.

The defendant, therefore, has no means by which to attack the commitment order collaterally, making it impossible for us to apply our rule that "claims of constitutionally ineffective counsel should be brought on collateral review."  Galloway, 56 F.3d at 1242.  The unusual circumstances of this case, as well as the fact that the record is adequate to decide the matter, lead us to reach the merits of the defendant's ineffective assistance of counsel claim.

In order to prove that the public defender rendered ineffective assistance of counsel, the defendant must show (1) that the counsel's performance was so deficient that it "fell below an objective standard of reasonableness," and (2) that the deficient performance prejudiced the defendant.  Strickland v.

- 11 -

Washington, 466 U.S. 668, 687-88 (1984).

With regard to the first question, courts must indulge a strong presumption that counsel's actions constitute "reasonable professional assistance." Id. at 689. Nonetheless, the defendant notes correctly that the Sixth Amendment requires a lawyer to act as an advocate for his client. See United States v. Cronic, 466 U.S. 648, 656 (1984). If counsel does not act as an advocate for the defendant, the process "loses its character as a confrontation between adversaries," id. at 656-57, and our entire justice system is premised on the belief that "debate between adversaries is often essential to the truth-seeking function of trials," Gardner v. Florida, 430 U.S. 349, 360 (1977) (plurality opinion), quoted in Cronic, 466 U.S. at 655 n.14. "An effective attorney 'must play the role of an active advocate, rather than a mere friend of the court.'" Osborn v. Shillinger, 861 F.2d 612, 624 (10th Cir. 1988) (quoting Evitts v. Lucey, 469 U.S. 387, 394 (1985)).

The defendant argues that his lawyer, the public defender, abandoned his role as the defendant's advocate and therefore rendered ineffective assistance of counsel in raising the competency issue against the defendant's wishes. The Sixth Amendment, however, did not require that the public defender adhere to the defendant's apparent wish to avoid the competency issue. We hold that when a lawyer has reason to believe that her client may not be mentally

competent to stand trial, she does not render ineffective assistance of counsel by making her concerns known to the court.

As with the previous issue, common sense all but disposes of the matter. While the Sixth Amendment demands that counsel to criminal defendants act as their advocates, the rule is not absolute in any sense. Counsel does not have to take every position and make every argument that the client requests. See United States v. Dawes, 874 F.2d 746, 748 (10th Cir. 1989) (per curiam) ("There is no right to counsel who will blindly follow a defendant's instructions."). Requiring a lawyer to argue at the direction of one who may be mentally incompetent—that is, one who seems unable to comprehend the nature of the proceedings against him—serves neither the individual client nor the truth-seeking process. See Brennan v. Blankenship, 472 F. Supp. 149, 156 (W.D. Va. 1979) ("Under any professional standard, it is improper for counsel to blindly rely on the statement of a criminal client whose reasoning abilities are highly suspect.").

Though this is an issue of first impression in our circuit,[3] the appellate

_____

[3]We have found only one line of cases, in California, addressing the precise issue before us in this case. See People v. Harris, 14 Cal. App. 4th 984, 994, 18 Cal. Rptr. 2d 92, 98 (Cal. Ct. App. 1993) ("We agree with the basic holding in Bolden that defense counsel does not provide ineffective assistance of counsel or violate the defendant's due process rights by seeking to prove the defendant's incompetence over the defendant's objections.").

- 13 -

opinions that have touched on it all imply that the criminal lawyer's obligation to advocate the positions of his client is dependent on the client being mentally competent to stand trial. See, e.g., Alvord v. Wainwright, 725 F.2d 1282, 1289 (11th Cir. 1984) ("*[G]iven [the defendant's] competency*, [the attorney] was ethically bound to follow the client's wishes." (emphasis added)). In Clanton v. Bair, 826 F.2d 1354 (4th Cir. 1987), the court found that defense counsel who respected his client's refusal to submit to a psychiatric evaluation had not rendered ineffective assistance of counsel. The court said:

> When Clanton rejected his trial lawyer's suggestion of a psychiatric evaluation, there was no basis for the lawyer's insistence upon it. Clanton seemed lucid and rational. He gave no indication of any mental or emotional problem. *There was no doubt of his competence to stand trial . . . .*

Id. at 1358. The implication, of course, is that if there were doubt of the defendant's competence, counsel should not necessarily respect the client's expressed desires.

This case highlights the fact that in addition to their duties as counselors, attorneys are also officers of the courts. The Constitution prohibits a court from trying defendants who are mentally incompetent. See Pate v. Robinson, 383 U.S. 375, 378 (1966). Of all the actors in a trial, defense counsel has the most intimate association with the defendant. Therefore, the defendant's lawyer is not only allowed to raise the competency issue, but, because of the

importance of the prohibition on trying those who cannot understand proceedings against them, she has a professional duty to do so when appropriate. See, e.g., Vogt v. United States, 88 F.3d 587, 592 (8th Cir. 1996) ("'The failure of trial counsel to request a competency hearing where there was evidence raising a substantial doubt about a petitioner's competence to stand trial may constitute ineffective assistance of counsel.'") (quoting Speedy v. Wyrick, 702 F.2d 723, 726 (8th Cir. 1983)). In fact, defendants often contend in collateral proceedings that their trial counsel rendered ineffective assistance by *failing* to request a competency hearing. See, e.g., Clanton, 826 F.2d at 1357-58.

Counsel's actions in this case were fully consistent with the American Bar Association Standards, which are a guide in determining reasonable professional behavior. See Strickland, 466 U.S. at 688. The pertinent standard states:

> Defense counsel should move for evaluation of the defendant's competence to stand trial whenever the defense counsel has a good faith doubt as to the defendant's competence. If the client objects to such a motion being made, *counsel may move for evaluation over the client's objection.* In any event, counsel should make known to the court and to the prosecutor those facts known to counsel which raise the good faith doubt of competence.

ABA STANDARDS FOR CRIMINAL JUSTICE Standard 7-4.2(c) (emphasis added).

Based on this ABA standard as well as the other cited authorities, the

- 15 -

entire panel agrees that defense counsel may move for a competency determination against a client's wishes without violating the Fifth or Sixth Amendment. The dissent, however, concludes that although defense counsel may (and probably must) *raise* the issue, she cannot continue to represent her client when the client does not agree that he is incompetent. According to the dissent, the Constitution requires that the defendant's view must be presented, and therefore substitute counsel be appointed to argue as the defendant wishes. In support of its position, the dissent cites the commentary to Standard 7-4.2, which notes that when an attorney advises the court of her client's possible incompetence, "[t]his may require, of course, that an attorney seek judicial permission to withdraw as defense counsel because of a conflict of interest." Id. Commentary Introduction. The dissenting opinion assumes that the "conflict" referred to here is the conflict that arises when the lawyer and his client have contrary beliefs regarding the defendant's competency. See Dissenting Op. at 7 ("[C]ircumstances like those before us are just what the drafter of the ABA Standards must have had in mind in their commentary about the necessity of the attorney seeking leave to withdraw.").

The conflict referred to in the commentary, however, is not that between the client and the lawyer. Further paragraphs in the commentary make clear that the conflict addressed by the ABA Standard is altogether different. The

ABA Standard recognizes that even among defendants whose competency to stand trial is dubious, in some instances it is in the best interest of the defendant to proceed to trial without a competency determination. For instance, if the prosecution has a weak case or the crime is a minor one, the defendant might prefer the small risk of conviction or relatively minor punishment to the opprobrium and possible long-term institutionalization that accompany a finding of incompetency. See Standard 7-4.2 Commentary ("Because of the sometimes severe consequences traditionally attendant upon a determination of incompetence, defense counsel may conclude that it is better for a technically incompetent defendant to proceed to trial."). In such a case, the lawyer's duty to represent the client's best interest requires one course of action, while the duty to maintain the integrity of the court by advising it of a defendant's possible incompetence requires another. See id. The standard resolves that conflict in favor of the court.

For the above reasons, the defendant's disagreement with the public defender's evaluation of his competence did not trigger the withdrawal procedure of Standard 7-4.2. Furthermore, considering the seriousness of the offense with which the defendant was charged, see 18 U.S.C. § 115(b)(1)(4), there was no conflict between the defense counsel's duty to serve his client's best interest and to raise the competency issue. Both duties required him to

raise the competency issue with the court. Thus, the conflict-of-interest language in Standard 7-4.2 is inapposite. Nothing else in the ABA Standards or the constitutional decisions bar defense counsel from arguing—or, as in this case, merely presenting testimony on—the point she was required to raise. See Hull v. Freeman, 932 F.2d 159, 169 (3d Cir. 1991) ("[W]e think it axiomatic that the desire of a defendant whose mental faculties are in doubt to be found competent does not absolve counsel of his or her independent professional responsibility to put the government to its proof at a competency hearing when the case for competency is in serious question."), overruling on other grounds recognized in Caswell v. Ryan, 953 F.2d 853 (3d Cir. 1992); Bundy v. Dugger, 816 F.2d 564, 566 n.2 (11th Cir. 1987) ("If defense counsel suspects that the defendant is unable to consult with him with a reasonable degree of rational understanding, he cannot blindly accept his client's demand that his competency not be challenged.") (citation and quotation marks ommited).

The public defender's actions in this case did not fall below an objective standard of reasonableness, and therefore he did not render ineffective assistance to the defendant.

## C.

Finally, the defendant argues that the evidence does not support the district court's finding that the defendant was mentally incompetent to stand

trial.  Competency to stand trial is a factual determination that can be set aside only if it is clearly erroneous.  See United States v. Crews, 781 F.2d 826, 833 (10th Cir. 1986) (per curiam).  In order for a defendant to be competent to stand trial, he must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and also a "rational as well as factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam).  "In making a determination of competency, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment."  United States v. Nichols, 56 F.3d 403, 411 (2d Cir. 1995).

In this case, the district court relied on the testimony of psychiatrist Rebecca Barkhorn, who evaluated the defendant at the court's request.  Dr. Barkhorn testified that the defendant was delusional and suffered from "paranoid ideation," causing him to believe that his lawyer was participating in a conspiracy, along with the prosecutor and the judge, to incarcerate him for reasons unrelated to the charge against him.  In her opinion the substitution of alternate counsel would not solve the problem, as the defendant would be unable to trust or work with any attorney who did not share his beliefs.

Dr. Barkhorn described the defendant's delusions in some detail and stated that they interfered substantially with his ability to understand events,

such as the criminal proceedings against him, because he could only evaluate those events through the prism of his delusions. According to the psychiatrist, the defendant's inability to think rationally about the case was evidenced by, among other things, his belief that the Immigration and Naturalization Service was somehow involved in the case against him and that the case also directly related to the abortion of a child that he had conceived sometime in the past. Dr. Barkhorn concluded that the defendant did not have "a rational understanding of many aspects of the case."

In addition to Dr. Barkhorn's testimony, the court relied on its own observation of the defendant's behavior, as well as the defendant's pro se filings in the case, which the court described as "irrational." We do not find the court's description of the defendant's pleadings clearly erroneous. Nor did the court clearly err in finding that Dr. Barkhorn's testimony established that the defendant was not competent to stand trial. To the contrary, Dr. Barkhorn's testimony touched heavily on the two relevant questions—the defendant's ability to consult with an attorney, and his ability to understand the proceedings against him.

IV.

We hold that the proceedings in this case did not violate the defendant's right to self-representation. Furthermore, we hold that a lawyer with a

reasonable doubt regarding the competency of his client to stand trial does not render ineffective assistance of counsel by raising the competency issue against the wishes of his client. Finally, we find that the evidence supports the district court's finding that the defendant was incompetent to stand trial. All other pending motions are denied.

We AFFIRM.

No. 96-1548, United States v. Boigegrain

**HOLLOWAY**, Circuit Judge, concurring in part and dissenting in part:

I agree with much of the scholarly analysis in the majority opinion, and I concur in the holding that the appeal is not moot. However, I am unable to fully join the opinion or concur in the result because of my views on one basic issue. I would hold under these circumstances that an accused is entitled to make the fundamental decision on his position on competency, and to counsel to assist him in presenting his position and in resisting a finding of incompetence to stand trial.

I feel that the majority opinion essentially overlooks the defendant's primary argument by analyzing it only as a contention of ineffective assistance of counsel. As I see it, his *primary* contention actually is that there was in effect a complete denial of the right to counsel here. Mr. Boigegrain's appellate counsel argue that at the hearing on defendant's competency to stand trial,

> there was no voice advocating Mr. Boigegrain's position. Instead, the moment for his defense was displaced with the *antagonistic* voice of Defense Counsel, who argued for his commitment. Mr. Boigegrain was left alone in the courtroom, without friend or advocate, and without the opportunity to be heard effectively.

Appellant's Opening Brief at 9 (emphasis added). Appellant's Reply Brief at 3 states that "the core of Defendant's argument is that Defendant was deprived of his right to an advocate who would argue for, as opposed to against, his liberty interests."

I am satisfied that the record clearly supports this description of events by Mr. Boigegrain's appellate counsel. At the hearing on his competency to stand trial on

December 6, 1996, 11 R. at 2-52, the Assistant Federal Public Defender appointed to represent the defendant, Mr. Conner, and Assistant U.S. Attorney Allison presented the bulk of the evidence on defendant's competency, id. at 10, 30, defendant being permitted to make brief statements. E.g., 34-43, 45-47. In fact, government counsel and the public defender spoke with one voice – they both developed psychiatric evidence showing only that defendant was not competent to stand trial. I agree that the defense counsel had the right and duty to raise the issue by reporting his concerns about defendant's competence. However, the result here was that both counsel laid the ground for the order that defendant be committed under § 4241(d) for up to four months for psychiatric or psychological examination. The order of commitment entered December 6, 1996, 1 R. doc. 54, the subject of this appeal, states that "the issue of the defendant's competency to proceed [was] raised initially by counsel for the defendant and subsequently joined by the United States." Id. at 1. The showing of incompetency of defendant was the *only* position that both counsel developed in the evidence, and this presentation was vigorously objected to by the defendant. 11 R. at 8-9.

I would hold that at the critical hearing Mr. Boigegrain was entitled to assistance of counsel to function in accord with the constitutional requirement that "counsel acts in the role of an advocate in behalf of his client, as opposed to that of *amicus curiae*." Anders v. California, 386 U.S. 738, 744 (1967). Here that critical

element was missing – there was *no* assistance by counsel to defendant to present his opposition to the commitment order.

There can be no serious doubt that the hearing on competency to stand trial is a critical stage of the prosecution at which the accused has the right to assistance of counsel, which is specifically mandated by statute. 18 U.S.C. §§ 4241(c), 4247(d). The latter statute further mandates that the defendant whose competency is the subject of the hearing shall be afforded the opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses. Id. The issue on which I part company with the majority is the acceptance of defense counsel's right here to elect conclusively defendant's position on the commitment order and evidence to be presented at the competency hearing, with the result that defendant had no assistance of counsel to present *his* position opposing a commitment order.

It is clear that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." See Jones v. Barnes, 463 U.S. 745, 751 (1983). Additionally, "with some limitations, a defendant may elect to act as his or her own advocate," id. (citing Faretta v. California, 422 U.S. 806 (1975)), although Barnes recognized that there is no constitutional duty resting on counsel assigned to prosecute a criminal appeal to raise every nonfrivolous issue requested by a defendant,

id at 754. Although most other decisions are the responsibility of counsel, after consultation with the client where appropriate and feasible, Standard 4-5.2(b), ABA Standards for Criminal Justice Prosecution Function and Defense Function (3d ed. 1993), the Court has never held that the fundamental decisions reserved to the client are limited to those noted above. Indeed, the courts of appeals, including this court, have recognized other critical decisions as reserved for the client.

For example, in Larson v. Tansy, 911 F.2d 392 (10th Cir. 1990), we reversed a criminal conviction because the defendant had not personally waived the right to be present during instruction of the jury, closing arguments and the rendering of the verdict, nor had defendant waived his right to be present by remaining silent when defense counsel purportedly waived the right. In Carter v. Sowders, 5 F.3d 975, 980-82 (6th Cir. 1993), the court held that counsel could not, without the accused's consent, waive the right to be present at a videotaped deposition which was to be used at trial. It has also been held that an accused must personally waive trial of the case to a jury of less than twelve. United States v. Guerrero-Peralta, 446 F.2d 876 (9th Cir. 1971). Several courts have held that a competent defendant may choose to forgo a defense of insanity. E.g., United States v. Marble, 940 F.2d 1543, 1547 (D.C. Cir. 1991); Foster v. Strickland, 707 F.2d 1339, 1343 (11th Cir. 1983); Frendak v. United States, 408 A.2d 364, 381 & n.31 (D.C. Ct. App. 1979); see also Dean v. Superintendent, Clinton Correctional Facility, 93 F.3d 58, 61 & n.1 (2d Cir. 1996) (citing cases). The Frendak

court reasoned that the philosophy of <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), and <u>Faretta</u> mandated that an accused "be permitted to make fundamental decisions about the course of the proceedings," 408 A.2d at 376, which were held to include whether to raise the defense of insanity at the time of the offense.

At this point, it is helpful to recall the reasons that led the en banc court to hold that this appeal could proceed in the first instance. In <u>United States v. Boigegrain</u>, 122 F.3d 1345 (10th Cir. 1997) (*en banc*) (<u>Boigegrain I</u>), nine judges of this court joined a per curiam opinion stating that a "defendant must not be left without recourse to appellate review where there is an immediate and significant loss of personal liberty." 122 F.3d at 1349. I would add that here defendant's immediate and significant loss of personal liberty was not the only substantial interest at stake for the defendant at the hearing where the determination was made whether a commitment order under § 4241(d) should be entered like that on appeal. There are several reasons, any or all of which may be of importance to an accused in a given case and any or all of which may have been regarded as important by Mr. Boigegrain in this case, for wishing to avoid a finding of incompetence to stand trial:

> An involuntary commitment for treatment to restore competence may extend well beyond the maximum sentence imposable for a relatively minor offense. A defendant could view the stigma flowing from a finding of mental illness as more opprobrious than that generated by a criminal conviction. An evaluation may force a defendant to reveal to a court-appointed expert information the defendant would prefer to keep secret. . . . A defendant might even prefer to be punished through imprisonment than to experience commitment to a mental hospital for

treatment, given the marginal conditions in many public mental institutions.

ABA Criminal Justice Mental Health Standards, Standard 7-4.2, commentary at 179-80 (1989).

Given the importance of the interests at stake, one must conclude that the decision on the defendant's position to oppose or acquiesce in a commitment under § 4241(d) qualifies as one of those fundamental decisions to be made by the client. I am convinced it is not permissible to wrest from the accused the authority to make the fundamental decision about his position at the competency hearing *before* he has been determined to be incompetent. Fifth and Sixth Amendment protections do not permit this result. Otherwise, the accused is deprived of the right to elect to defend his competence at a hearing with the assistance of counsel.

At the December 6, 1996, hearing in question here, where the judge granted the order of commitment, Mr. Boigegrain had not yet been found incompetent. Counsel, his good intentions notwithstanding, did not have the expertise to determine on his *ipse dixit*, his client's competence.[1] Certainly counsel was in a position, perhaps uniquely, to observe his client and to communicate with him. In the course of his representation, counsel became concerned about his client's competency and filed the

---

[1] Thus, I disagree with one proposed approach to this issue which would leave the matter to the informed discretion of defense counsel. Rodney J. Uphoff, *The Role of the Criminal Defense Lawyer in Representing the Mentally Impaired Defendant: Zealous Advocate or Officer of the Court?*, 1988 Wisc. L. Rev. 65.

initial motion for a determination of defendant's competency. I agree with the majority that in such circumstances counsel must be permitted, and may be duty bound, to raise the issue as he did. But I cannot agree that this step by counsel must control the position to be taken in the proceedings to follow.

Where, as is the case here, defense counsel has doubts of his client's competence and expresses his doubts to the court, I would hold that the defendant then has the right to decide if he will agree to a commitment order or wishes it to be opposed. If he elects to oppose commitment, as defendant did here, new counsel should be appointed. The majority opinion cites Standard 7-4.2 of the ABA Criminal Justice Mental Health Standards for the holding that defense counsel may *move* for a competency evaluation over his client's objection. The commentary to this provision notes, however, that when counsel does raise the issue over his client's objection, "[t]his may require, *of course*, that an attorney seek judicial permission to withdraw as defense counsel because of a conflict of interest." Id., commentary at 177 (emphasis added). I conclude that the circumstances like those before us are just what the drafters of the ABA Standards must have had in mind in their commentary about the necessity of the attorney seeking leave to withdraw.

Other courts confronted with similar problems in the context of deciding whether to permit a defendant to forgo an insanity defense have resorted to the appointment of amicus counsel when necessary to ensure that arguments both for and

against the defendant's desired course of action are presented. See Marble, 940 F.2d at 1544; Frendak, 408 A.2d at 368-69, 380. The practice in the Ninth Circuit appears to be that any time a substantial conflict develops between counsel and a defendant, the trial court inquires into the matter to ensure that the attorney can still effectively represent the client. See, e.g., Brown v. Craven, 424 F.2d 1166, 1169-70 (9th Cir. 1970). Where proper representation requires, substitute or "conflict counsel" should be appointed to present defendant's position. United States v. Gonzalez, 113 F.3d 1026, 1028-29 (9th Cir. 1997); Mason ex rel. Marson v. Vasquez, 5 F.3d 1220, 1223-24 (9th Cir. 1993); United States v. Wadsworth, 830 F.2d 1500, 1510-11 (9th Cir. 1987); United States v. Kaczynski, No. CR-S-259, 1998 WL 15049, at *3 (E.D. Cal. January 9, 1998). Based on a parallel rationale, I would hold that because of the important interests at stake in the competency determination, where it is apparent that the defendant desires to resist a finding of incompetency, the district judge should appoint new counsel to assist the defendant in presenting his position.

In sum, I would not affirm the commitment order as the majority opinion does, but vacate it as constitutionally flawed. I would hold that it was a denial of due process to accept as conclusive, on defendant's position, defense counsel's decision to raise his client's incompetency. When the defendant elected to defend his competence and oppose a commitment order, his attorney should have sought, and should have been permitted, to withdraw. The Court has rejected as impermissible a procedure in which

-8-

"counsel is not an assistant, but a master." <u>Faretta</u>, 422 U.S. at 820. When the defendant elected to defend his competence and oppose the commitment order, defendant was entitled to the assistance of counsel in presenting *his* position. New counsel, like the substitute or conflict counsel discussed above, should be appointed so that the defendant would have the assistance of counsel to present *his* position.

Leaving the defendant alone with only an attorney suggesting, contrary to the position defendant elected to take, that he was incompetent denied him due process under the Fifth Amendment and assistance of counsel under the Sixth Amendment. Because defendant was completely without assistance of counsel at the crucial stage of the competency hearing, I would hold that the error is structural and reversible per se. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 629-30 (1993) (deprivation of the right of counsel cited as example of structural error requiring "automatic reversal"). Accordingly, I respectfully dissent in part and concur in part.