**UNITED STATES of America,**
**Plaintiff,**

v.

**John J. PAPPERT, Defendant.**

**No. Crim.A. 94–2001601KHV.**

United States District Court,
D. Kansas.

April 6, 1999.

Tanya J. Treadway, Office of the U.S. Atty., Kansas City, KS, for Plaintiff.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on defendant John J. Pappert's amended *Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody* (Doc. # 116) filed April 27, 1998.[1] For the reasons stated below, defendant's Section 2255 motion will be overruled.

#### Factual Background

The Tenth Circuit summarized the facts in this case as follows:

Pappert was the president and majority shareholder of Century Office Products, Incorporated ("COPI"), a business that leased, sold, and serviced photocopier machines and other office equipment from its inception in 1980 until its demise in 1993. Pappert managed the fi-

---

**1.** Also before the Court is defendant's *Motion For Leave To Supplement Record* (Doc. # 137) filed January 28, 1999, which the Court sustains.

nances and day-to-day operations of COPI, and was in charge of leasing. COPI's leasing operation worked as follows: a representative of the company would initiate a leasing agreement with a customer, and Pappert would usually close the deal. Many of these customers were schools and school districts. Pappert sold most leases to banks or other financing sources, sometimes through a lease broker. These financing sources would pay COPI in exchange for the rights to income from the lease and to the equipment itself. If the transaction took place through a broker, the broker would pay COPI and execute a second assignment to the financing source.

COPI's practice of assigning leases was a key issue at trial. Each lease agreement contained a provision allowing COPI to assign the lease to third parties, and permitting reassignment. COPI was not obligated to notify customers of assignments, and Pappert often did not do so. In some instances, he would tell customers that he would not sell their lease, then would proceed to do so. Although Pappert claims that customers were given the choice to pay either COPI or the financing source, some customers testified that they were simply told to pay COPI and never learned that their leases had been assigned.

Periodically, Pappert would offer to replace his customers' old machines with new equipment. He convinced the customers that he would "pay off" the old leases if the customer would take out new leases on better, more up-to-date equipment. If a customer agreed to enter into a new lease, Pappert would substitute the new equipment for the old. However, his practice was to take over the installments without paying off in full the old lease. It was in this fashion that customers unwittingly became liable on multiple leases.

Pappert also misled lending institutions by replacing equipment and taking over the customers' payments on their old leases without informing the lenders. Many creditors thought that the original equipment was still in place and the customers were still making payments. Representatives of the financial institutions testified that if they had known of Pappert's repossession, they would have at least reevaluated the creditworthiness of the transaction. Most indicated that they would not have accepted the new arrangement because COPI did not have the good credit of its school district customers.

Ultimately, Pappert's operation began to implode. As he fell behind on more and more payments, several financing institutions began to call in Pappert's debt. This led him to submit forged leases through his lease broker to another bank, Superior National Bank, in an attempt to bring in cash. When that bank notified the lessees of their delinquency, the lessees discovered Pappert's ruse. Nonpayment on the customers' many leases eventually led the financing sources to seek payment directly from the lessees. A slew of lawsuits ensued. The government tells us that 39 entities lost over $5.5 million, and Superior National Bank was put into receivership as a result of Pappert's conduct.

*United States v. Pappert,* 112 F.3d 1073, 1075–76 (10th Cir.1997).

A grand jury indicted defendant on charges related to the fraud scheme. On October 25, 1994, a jury convicted defendant on three counts of mail fraud, four counts of wire fraud, and two counts of submitting false documents to a federally insured financial institution. *See* 18 U.S.C. §§ 1341, 1343, 1014. The Court sentenced defendant on February 21, 1995.

Defendant appealed his conviction, challenging (1) the district court's rulings on jury instructions involving good faith and materiality; (2) sufficiency of the evidence of intent to commit fraud, use of United States mails, and knowledge of submission of false documents to a federal bank; and (3) sentencing enhancements based on the amount of loss, abuse of public or private trust, jeopardizing the safety and sound-

ness of a financial institution; and (4) the district court's restitution order. The Tenth Circuit affirmed. *See Pappert*, 112 F.3d 1073.

On December 8, 1997, defendant moved for a new trial based on a variety of newly discovered evidence, including the following:

> (1) the losses to Superior National Bank were not losses because the FDIC took over the Bank as receiver and listed the losses as assets; (2) the FDIC collected money from some of the schools whose leases had been sold to Superior National Bank; (3) defendant did not admit to Mark Harpst, superintendent of West Platte R II School District, that he had perpetrated a scam on the leases to West Platte Schools; (4) the FDIC sued Harpst in his individual and representative capacity; (5) Dr. Sciara bought leases at the same time Northland Bank bought leases; (6) the government violated its duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to inform defendant of items (4) and (5); and (7) defendant's depression was a contributing factor to his fraud. [Defendant also asserted] he is entitled to a new trial because the undersigned judge had a conflict of interest or the appearance of partiality at trial and sentencing.

Doc. # 125, filed July 29, 1998 (citing Doc. # 110).

The Court denied defendant's motion for a new trial, and defendant did not appeal from that decision.

### ANALYSIS

In his Section 2255 motion[2], defendant presents seven grounds for relief: (1) ineffective assistance of trial counsel; (2) *Brady* violations; (3) government use of testimony it knew to be false; (4) the appearance of impropriety of the trial judge; (5) ineffective assistance of sentencing counsel; (6) the trial judge's failure to order a mental examination; and (7) ineffective assistance of appellate counsel.

■ In a Section 2255 proceeding, a defendant is procedurally barred from raising issues that were not raised on direct appeal, unless he establishes cause for the default and prejudice therefrom, or that manifest injustice will result if the claims are barred. *United States v. Cook*, 45 F.3d 388, 392 (10th Cir.1995); *see United States v. Frady*, 456 U.S. 152, 164–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see also United States v. Walling*, 982 F.2d 447, 448–449 (10th Cir.1992) (Section 2255 not available to test legality of matters that should have been raised on appeal). The Tenth Circuit has held that claims of ineffective assistance of trial counsel need not be raised on direct appeal and instead are properly raised in a Section 2255 motion. *See United States v. Galloway*, 56 F.3d 1239, 1240–41 (10th Cir.1995) (ineffective assistance claims are not subject to procedural bar). Thus defendant's claims of ineffective assistance of trial and sentencing counsel are not procedurally barred. Further, claims of ineffective assistance of appellate counsel clearly could not have been raised on direct appeal. Thus Court may address that claim as well.

■ In his new trial motion, defendant asserted claims of *Brady* violations, government use of false testimony, and the appearance of impropriety of the trial judge. These issues are the same issues he now raises in his Section 2255 motion. In denying defendant's new trial motion, this Court found no merit to these claims, and defendant did not appeal the denial of his new trial motion. Thus he is now barred from raising these issues in his Section 2255 motion.[3] *See United States v.*

---

**2.** On May 6, 1997, before he filed his new trial motion under Fed.R.Crim.P. 33, defendant filed his original Section 2255 motion. See Doc. # 94 (styled as a "Motion for Resentencing"). Defendant has now amended the original motion under Section 2255. *See* Doc. # 116.

**3.** Even if the Court were to address the merits of these claims, the Court is convinced after reviewing the record that none of these claims would support relief under Section 2255.

Defendant asserts that the U.S. Attorney failed to disclose several items of evidence

*DeRewal,* 10 F.3d 100, 105 n. 4 (3d Cir. 1993) (issues barred from litigation in § 2255 where district court denied Rule 33 motion based on newly discovered evidence of false testimony and defendant did not raise issue in direct appeal). The other issue defendant raises in his Section 2255—that the trial judge should have ordered a competency hearing—could have been raised on direct appeal of his conviction. But because defendant has alluded to ineffective assistance of appellate counsel as cause for failing to raise the issue, the Court will address the competency hearing question in addition to defendant's claims of ineffective assistance of counsel.

### I. *Trial Judge's Failure to Order Mental Examination*

■ Defendant argues that the trial judge erred in failing to order a mental examination to determine his competency to stand trial. The materials supplied in support of defendant's Section 2255 motion do not suggest, however, that he was incompetent to stand trial. *See, e.g.,* Doc. # 132 (affidavit of psychotherapist and letter of treating psychiatrist, both indicating that defendant suffered from depression). Further, the undersigned judge perceived no indication that defendant was unable to understand the proceedings or to assist in his own defense. *See Castro v. Ward,* 138 F.3d 810, 817 (10th Cir.1998) (question is whether reasonable trial court judge should have experienced doubt as to competency; evidence that may trigger need for competency hearing may include irrational behavior, demeanor at trial, and any prior medical opinion on competence to stand trial).

### II. *Ineffective Assistance of Trial Counsel*

Defendant asserts that trial counsel provided ineffective assistance in three areas: (1) dealing with evidence of loss due to defendant's fraud; (2) dealing with questions concerning defendant's mental capacity at the time of the offense as well as his competency to stand trial; and (3) advising defendant whether to plead guilty. Defendant raised the loss issue in his direct appeal and again in his new trial motion. This issue is thus procedurally barred.

The next issue is whether counsel was ineffective in failing to investigate or offer evidence concerning defendant's mental condition at the time of the offense. Defendant provides his own affidavit that he received psychiatric treatment and mental health counseling for depression and anxiety beginning in 1986. He took Prozac for depression from 1988 through 1989. His doctor prescribed other antidepressant medication during 1990 and 1991. Defendant was placed under a conservatorship

that it was required to produce under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). First, defendant asserts that the U.S. Attorney failed to inform him that one of the government's witnesses was a defendant in an action on the lease. The Court dealt with this issue in overruling defendant's new trial motion. Second, defendant asserts that the U.S. Attorney failed to disclose that the FDIC was pursuing collections of assets alleged as losses related to defendant's criminal conduct. Where a defendant raises a *Brady* issue in a Section 2255 motion, the Court must determine whether the omitted evidence was material under *Brady* and its progeny. *See United States v. Hernandez,* 94 F.3d 606, 609–10 (10th Cir.1996) (pointing out that there is little difference between prejudice of *Frady* and materiality test of *Brady*). Where, as here, specific information was not requested, the standard for materiality is whether the record reveals a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Buchanan,* 891 F.2d 1436, 1440–45 (10th Cir.1989). Applying that standard to this case, the Court is confident that the record reveals no probability that disclosure of · the cited evidence would have resulted in a different verdict.

In its *Memorandum and Order* denying defendant's new trial motion based on newly discovered evidence, the Court addressed defendant's claims concerning alleged government use of false testimony and the alleged appearance of impropriety of the trial judge. *See* Doc. # 125 filed July 29, 1998. After reviewing defendant's Section 2255 motion and supporting documents, the Court discerns no reason to alter the findings in that order.

on September 10, 1992, which continued until December 27, 1993. During that time he received intensive mental health outpatient treatment, and was hospitalized for a brief period for depression in September, 1992. *See* Doc. # 132 (affidavit of Lois Wilkins, Ph.d.); Doc. # 139 (affidavit of defendant). Defendant continued to receive mental health treatment after his release from the hospital. Defendant was indicted in March, 1994. *See Indictment,* Doc. # 1.

To establish ineffective assistance of trial counsel, defendant must show that the performance of counsel fell below an objective standard of reasonableness, and that the deficient performance was prejudicial. *See Strickland v. Washington,* 466 U.S. 668, 687, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish prejudicial performance defendant must show that there is a "reasonable probability" that but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S.Ct. 2052. A court need not address whether counsel's performance was deficient if it is easier to dispose of the ineffectiveness claim on the ground that even if there was deficient performance, defendant can not establish that it was prejudicial. *See United States v. Jones,* 852 F.2d 1275, 1277 (10th Cir.1988).

■ · In this case, in order to establish an insanity defense, defendant would have had to admit the conduct alleged in the indictment. The record clearly shows, however, that throughout the proceedings defendant has clearly proclaimed his innocence. Further, the evidence of defendant's conduct in carrying out the fraudulent scheme for which he was convicted suggests that an insanity or diminished capacity defense would be fruitless. Thus defendant's claims regarding counsel's failure to investigate or offer evidence of defendant's mental condition at the time of the offense can not meet the deficient performance or the prejudice prong of *Strickland.*

■ Defendant also appears to raise a question as to whether trial counsel was ineffective for failing to raise a question of competency to stand trial. "[B]ecause of the importance of the prohibition on trying those who cannot understand proceedings against them, [counsel] has a professional duty to [raise the issue] when appropriate." *United States v. Boigegrain,* 155 F.3d 1181, 1188 (10th Cir.1998) (citing *Vogt v. United States,* 88 F.3d 587, 592 (8th Cir.1996) (failure of trial counsel to request competency hearing where evidence raised substantial doubt about a petitioner's competence to stand trial may constitute ineffective assistance of counsel)). When a seemingly lucid and rational client rejects the suggestion of a psychiatric evaluation and there is no indication of a mental or emotional problem, a trial lawyer may reasonably forego insistence upon an examination. *Clanton v. Bair,* 826 F.2d 1354 (4th Cir.1987). The mere fact that defendant had undergone psychiatric treatment and had been briefly hospitalized more than a year before the time of trial does not compel a conclusion that counsel fell below a standard of reasonableness in failing to insist on psychiatric evaluation. When defense counsel withdrew his notice that the defense might be based on defendant's mental condition, and the government in response withdrew its motion for a mental status evaluation, defendant was present and acquiesced in the strategy of defense counsel. Further, based on the Court's observations, defendant was at all times lucid. Thus the record reveals no factual basis for finding that defense counsel was ineffective because he failed to insist on a mental evaluation.

■ Defendant also asserts that trial counsel failed to provide him accurate information about a guilty plea. The Supreme Court has applied *Strickland* to claims of ineffective assistance during the plea process. *See Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203

(1985). Given that defendant maintained his innocence, however, the Court finds that he has not met his burden to show cause and prejudice under *Strickland* on this claim.

### III. *Ineffective Assistance Of Sentencing Counsel*

■ Defendant asserts that at sentencing, counsel failed to review the record on defendant's mental condition. Defendant asserts that if counsel had done so, he would have objected to the government's remarks concerning his condition. But defendant fails to suggest how counsel's failure to object altered the sentence, or what objection might have influenced the sentence. The Court finds no merit in this argument.

### IV. *Ineffective Assistance Of Appellate Counsel In Failing To Raise Ineffective Assistance Of Trial Counsel*

■ Defendant asserts that appellate counsel was ineffective for failing to attack the effectiveness of trial counsel. The Tenth Circuit has clearly stated that generally issues of ineffective assistance are to be brought in the first instance in a Section 2255 motion. *See United States v. Galloway,* 56 F.3d 1239, 1240–41 (10th Cir. 1995). Therefore, failure to raise such an issue on direct appeal does not constitute "deficient performance" under *Strickland.*

Section 2255 requires the Court to grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Because the motions, files and records in this case conclusively show that defendant is entitled to no relief, he is not entitled to a hearing. *See United States v. Marr,* 856 F.2d 1471, 1472 (10th Cir.1988).

**IT IS THEREFORE ORDERED THAT** *Defendant's Motion Under Section 2255* (Doc. # 116) filed April 27, 1998, be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED THAT** defendant's *Motion For Leave to Supple-*

*ment Record* (Doc. # 137) filed January 27, 1999, be and hereby is **SUSTAINED.**