**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael SUTTON, Defendant–
Appellant.**

**No. 01–6130.**

United States Court of Appeals,
Tenth Circuit.

July 23, 2002.

Before HENRY and McKAY, Circuit Judges, and BROWN,* Senior District Judge.

## ORDER AND JUDGMENT **

McKAY, Circuit Judge.

This criminal appeal arises from an incident which occurred at Mr. Michael Sutton's house, located on Indian Trust Land, where Mr. Sutton, his brother Daniel Sutton, and Daniel's wife were drinking. Mr. Sutton's and Daniel's children were also present. Daniel became loud and antagonistic so Mr. Sutton sent the children inside. Daniel threw his wife off the porch, and she ran for help. Mr. Sutton went inside the house and locked the doors. Daniel punched through a window, cutting Mr. Sutton's arm on the jagged glass. Mr. Sutton retrieved a twelve gauge shot gun from his bedroom and loaded it with five slug shells. Mr. Sutton returned to the front of the house with the gun and told Daniel to "quit." Mr. Sutton heard more

---

* Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

glass break. Mr. Sutton, standing approximately ten feet away, fired in Daniel's direction. The shot hit Daniel in the abdomen and killed him. Daniel was not armed.

Mr. Sutton pleaded guilty to an information charging him with second degree murder in violation of 18 U.S.C. § 1111(a) and 18 U.S.C. § 1153. Defendant was originally charged by criminal complaint in the Tribal District Court for the Cheyenne and Arapaho tribes of Oklahoma, but the court dismissed the case after federal charges were filed.

After Mr. Sutton pleaded guilty, a United States Probation Officer prepared a Presentence Report and disclosed it to Mr. Sutton. The Probation Officer concluded that nothing about the case warranted a departure from the sentencing guideline range for imprisonment of 97 to 121 months. Mr. Sutton filed objections to the Report seeking a downward departure based on the victim's conduct, aberrant behavior, and Defendant's status as a Native American. The district court overruled Defendant's objections and sentenced him to 97 months' imprisonment and five years' supervised release. Mr. Sutton appeals to this court.

■ Mr. Sutton first claims that his Fifth Amendment Due Process rights were violated because the Presentence Report was incomplete and because the probation officer had improper ex parte contacts with the judge. Mr. Sutton's incomplete Presentence Report allegations fail because of the cursory nature of those allegations; Mr. Sutton never identified any particular witnesses who would have been interviewed. Additionally, Mr. Sutton's ex parte contact allegations fail because we have previously approved such contacts. See *United States v. Davis*, 151 F.3d 1304, 1306–07 (10th Cir.1998) ("Because of the close working relationship between the probation officer and the sentencing court, the probation officer may communicate ex parte with the district court.") (internal quotation marks omitted).

■ Mr. Sutton next claims his counsel was rendered ineffective during the preparation of the Presentence Report and the sentencing process resulting in a denial of due process of law. Mr. Sutton argues that he was not provided the opportunity to respond to or be privy to any of the information which was provided to the court by the probation officer outside his counsel's presence. Mr. Sutton also claims that witnesses communicated with the court in private and outside his counsel's presence. The Government responds that Mr. Sutton's claim that the probation officer and others met with the judge in private is unsupported by the evidence.

Mr. Sutton also argues that he did not receive effective assistance of counsel because his decision to plead guilty was based on erroneous advice given to him by his counsel. Mr. Sutton alleges that counsel encouraged him to plead guilty because the Government could also have prosecuted him pursuant to 18 U.S.C. § 924(c). Section 924(c)(1) is a strict liability offense to which no defenses exist should Mr. Sutton be found guilty of any lesser included offense to Murder II, such as Manslaughter. This led Mr. Sutton to admit to the reckless handling of a firearm provision so that he could present evidence regarding the victim's conduct and his aberrant behavior. Mr. Sutton now argues that since § 924(c) is not enumerated under § 1153, the Government could not have used § 924(c) as a strict liability provision to enhance the underlying felony. The Government responds that it could have "prosecuted [Mr. Sutton] under § 924(c) for an underlying felony anchored in the jurisdictional basis of § 1153." Aple. Supp. Br. at

6. Therefore, the Government argues that since counsel properly advised Mr. Sutton, he was not denied effective assistance of counsel.

We need not reach the merits of Mr. Sutton's ineffective assistance of counsel claims. We have oft expressed our

reluctan[ce] to hear claims of ineffective assistance [of counsel which are] advanced for the first time in this court because we work at a distinct disadvantage when we operate without the factual development and judicial reasoning afforded by lower court proceedings. Therefore, only in the very rare instance that a claim of ineffective assistance is fully developed in the record will we hear it for the first time on appeal.

*United States v. Boigegrain*, 155 F.3d 1181, 1186 (10th Cir.1998) (citations omitted).

This is not one of those "rare instances" which would permit consideration of Mr. Sutton's ineffective assistance claims on direct appeal. A review of the record reveals a lack of necessary factual development that requires development at the trial court level. We will neither consider nor foreclose an appeal until the record is reviewed and developed in the trial court through an action brought pursuant to 18 U.S.C. § 2255. *See id.*

■ Mr. Sutton next contends that the district court erred in denying his request for departure pursuant to United States Sentencing Guideline § 5K2.10 based on the victim's conduct and Guideline § 5K2.20 based on aberrant behavior. A district court's refusal to grant a downward departure is generally not reviewable on appeal except when the district court mistakenly believed that it lacked the authority to depart. *United States v. Castillo*, 140 F.3d 874, 887 (10th Cir.1998); *United States v. Contreras*, 59 F.3d 1038, 1040 (10th Cir.1995).

Mr. Sutton argues that the district court applied the wrong version of the Guidelines which led the court to believe that it did not have the authority to depart. The Guidelines in effect at the time of the offense (1998 edition) allow departure for aberrant behavior where conduct differs significantly from the norm. The 2000 edition further defines aberrant behavior and prohibits downward departure for aberrant behavior when the offense involves death. While the probation officer did rely on the 2000 edition of the Guidelines manual to state that a downward departure for aberrant behavior was not warranted in Mr. Sutton's case, the district court was aware that the 1998 version was the appropriate version to apply. *See* Rec., Vol. III, at 145–50. The district court specifically stated that it had the authority to depart and then gave its reasons for not doing so. *Id.* at 150–52. Because the district court recognized that it had the authority to depart but in its discretion elected not to do so, we are without jurisdiction to review this issue.

■ Mr. Sutton next argues that the Major Crimes Act regarding offenses in Indian Country has a disparate impact on Indian tribal members denying him equal protection of the law. Defendant's equal protection argument is reviewed de novo for plain error because no objection was made at trial. *See* Fed.R.Crim.P. 52(b).

Under the Major Crimes Act, 18 U.S.C. § 1153, any Indian who commits murder within Indian country "is subject to the same laws and penalties as all other persons committing [murder,] within the exclusive jurisdiction of the United States." The Supreme Court has rejected Mr. Sutton's argument that § 1153 was based on an impermissible racial classification. *See United States v. Antelope*, 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977). Mr.

Sutton was treated no differently than any other person who kills another person on property where the federal government has jurisdiction. We hold that Mr. Sutton was not denied equal protection of the law.

For the foregoing reasons, we **DISMISS** without prejudice Defendant's ineffective assistance of counsel claims. In all other respects, the decision of the district court is **AFFIRMED**.