**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 18 1997**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ERIC DEVON GREEN,
VINCENT BERRY,
WILLIAM LEROY HARDING,

      Defendants-Appellants.

No. 96-6042
No. 96-6043
No. 96-6046

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CR-95-099-L)**

---

Susan L. Foreman, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, Colorado, appearing for appellants Green and Berry.

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma, appearing for appellant Harding.

Ted A. Richardson, Assistant United States Attorney, (Patrick M. Ryan, United States Attorney, with him on the brief) Oklahoma City, Oklahoma, appearing for appellee.

---

Before **PORFILIO**, Circuit Judge, **HENRY,** Circuit Judge, and **MCWILLIAMS**, Senior Circuit Judge.

---

**McWILLIAMS,** Senior Circuit Judge.

---

By superseding indictment, Eric Devon Green, Vincent Berry and William Leroy Harding were jointly charged in the United States District Court for the Western District of Oklahoma with various criminal acts arising out of two robberies, and one attempted robbery, of three federally insured banks in or around Oklahoma City, Oklahoma. In a joint trial, all three were convicted on all counts wherein they were charged, and all were sentenced to imprisonment. Green (No. 96-6042) and Berry (No. 96-6043) have appealed their respective convictions and sentences. Their separate appeals were companioned for purposes of briefing and oral argument. Harding (No. 96-6046) also appealed his conviction and sentence and his counsel has filed a separate brief. All three appeals were set for oral argument before this panel of the court, and counsel for Green and Berry argued their appeals. Thereafter counsel for Harding argued his appeal. The panel has now determined that these three appeals should be consolidated for disposition in one opinion since they are interrelated and there is, understandably, considerable duplication in the respective briefs of the appellants.

In Count 1 of the superseding indictment, Green, Berry and Harding were charged with conspiring from December 23, 1994, to June 5, 1995, to rob various federally insured banks in Oklahoma in violation of 18 U.S.C. §§ 2113(a) and (d), and 18 U.S.C. § 371.

In Count 2, Green and Berry, but not Harding, were charged with robbery by force, violence and intimidation on December 23, 1994, of the Local Federal Bank in Oklahoma City, Oklahoma, a federally insured bank, in violation of 18 U.S.C. § 2113(a). In that same count, they were also charged with putting in jeopardy the life of Allison Ammer by the use of a firearm, in violation of 18 U.S.C. § 2113(d), in committing the aforesaid robbery.

In Count 3, Green and Berry, but not Harding, were charged with robbery by force, violence and intimidation on February 17, 1995, of the Bank of Oklahoma located in Midwest City, Oklahoma, a federally insured bank, in violation of 18 U.S.C. § 2113(a). In that same count, they were also charged with putting in jeopardy the lives of Paula Enix and Julie Cooper by the use of a firearm, in violation of 18 U.S.C. § 2113(d), in committing the aforesaid robbery.

In Count 4, all three defendants were charged with an attempt to enter and rob Bank IV of Guthrie, Oklahoma, a federally insured bank, on June 5, 1995, in violation of 18 U.S.C. § 2113(a), each of the three defendants then having an intent to commit bank robbery, by force, violence and intimidation.

In Count 5, Green was charged with knowingly carrying a firearm, a .380 caliber Pietro Beretta pistol, on June 5, 1995, during and in relation to a crime of violence, namely, attempted robbery of a federally insured bank, in violation of 18 U.S.C. § 924(c)(1).

In Count 6, Green was charged with possessing a firearm, a .380 caliber Pietro Beretta pistol, on June 5, 1995, after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

In Count 7, Berry was charged with carrying a firearm on June 5, 1995, during and in relation to a crime of violence, namely, attempted robbery of a federally insured bank, in violation of 18 U.S.C. § 924(c)(1).

In Count 8, Harding was charged with carrying a firearm, a .38 caliber Smith and Wesson revolver, on June 5, 1995, during and in relation to a crime of violence, namely, attempted robbery of a federally insured bank, in violation of 18 U.S.C § 924(c)(1).

In Count 9, Harding was charged with carrying a firearm on June 5, 1995, after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

As indicated, Green, Berry and Harding were jointly tried, and a jury found all three guilty of the respective charges against them. Specifically, Green was found guilty on Counts 1, 2, 3, 4, 5 and 6. Berry was found guilty on Counts 1, 2, 3, 4 and 7. Harding

- 4 -

was found guilty on Counts 1, 4, 8 and 9.[1]  Some background is necessary to an understanding of the issues raised on appeal by the three defendants.

The government's evidence showed that four men on December 23, 1994, robbed at gun point the Local Federal Bank in Oklahoma City, Oklahoma.  The four were dressed in black from head to foot, including "black gloves, black sweats, [and] ski masks [that] were black."  One robber vaulted over the counter and demanded money. Witnesses testified that the four were black.  The robbers' statements and demands were loud and laced with obscenities and vulgar terms.  A security guard for Burns International Security Service was overpowered by the robbers who stole his .38 caliber Smith and Wesson pistol.  The robbery lasted "no more than three minutes" and approximately $9,900 was taken by the robbers who then effected a successful escape.

The government's evidence also showed that on February 17, 1995, a branch of the Bank of Oklahoma in Midwest City, Oklahoma, was robbed at gunpoint by four men dressed in dark sweatsuit-type clothing wearing ski masks and gloves.  The robbers used

---

[1]Green was sentenced to imprisonment for 60 months on Count 1; 168 months on Counts 2, 3 and 4; 60 months on Count 5; and 120 months on Count 6, with the sentences imposed on Counts 1, 2, 3, 4 and 6 to be served concurrently and the term imposed on Count 5 to be served consecutively to the others.  Berry was sentenced to imprisonment for 60 months on Count 1; 132 months on Counts 2, 3 and 4; and 60 months on Count 7, with the sentences on Counts 1, 2, 3 and 4 to run concurrently and the sentence on Count 7 to be served consecutively to the others.  Harding was sentenced to imprisonment for 39 months on Count 1; 39 months on Count 4; 60 months on Count 8; and 39 months on Count 9, with the sentences on Counts 1, 4 and 9 to be served concurrently and the sentence on Count 8 to be served consecutively to the others.

demeaning and vulgar language to the bank employees and absconded with approximately $21,421.

One Raphael Avila was driving in the vicinity of the Bank of Oklahoma at the time of the robbery. At that place and time, a van pulled out in front of the car Avila was driving, causing him to slam on his brakes. Avila then began to follow the van. As Avila was catching up with the van, the driver of the van slammed on his brakes and the occupants of the van jumped from the van and fled on foot. One of them, before disappearing, fired several shots at Avila, his car being hit twice. The van was abandoned on the street. Inside it, police found a white pillowcase containing approximately $5,110. In the vicinity of the van, the police recovered three expended cartridge casings and a spent bullet. The casings were stamped "NNY 88" and were of a size associated with a .380 automatic pistol cartridge.

Through various tips, the FBI targeted Green and Berry, and agents began to surveil the two. On Friday, June 2, 1995, agents followed Green, Berry, and an unidentified woman, who drove in a white Oldsmobile Cutlass from Oklahoma City to Bank IV in Guthrie, Oklahoma. At the bank, the woman went into the bank and cashed a $10.00 bill. The woman, Adrienne Colbert, testified for the government at trial. She stated that, when she returned to the car from Bank IV, she was specifically asked by Green and Berry whether there was a security guard on duty inside the bank. After

leaving the bank, the agents followed Ms. Colbert and Green and Berry back to Oklahoma City.

On Monday, June 5, 1995, the agents observed Green and Berry, both Afro-Americans, in a white Oldsmobile Cutlass drive to 121 Northwest 24th Street in Oklahoma City, where they picked up a third man, also an Afro-American who was later identified as William Harding. The three stopped for gas and then went to "Mother & the Boys Restaurant," a restaurant operated by Green and Berry's mother, Green and Berry being step-brothers. The three stayed at the restaurant for about five minutes and emerged therefrom carrying a tablecloth, which appeared to contain some items. All three then got into the car and drove to Guthrie, Oklahoma, followed by FBI agents.

An employee of Bank IV testified that she saw a white car in front of the bank and that the driver drove by two or three times. An agent, who was at the scene, was able to see the driver's head swivel as if looking at the bank. However, the driver of the vehicle did not stop and proceeded to return to Oklahoma City.

The FBI stopped the defendants' white Oldsmobile Cutlass on an off-ramp of Interstate 44 in Oklahoma City a short time later. A loaded .38 caliber Smith & Wesson revolver was removed from Harding's waistband. An agent, who searched the Cutlass, found and seized ski masks, gloves, sweat suits and a firearm from under the front passenger's seat. Also, a firearm was taken from Berry. In all, three sets of "double" clothing were taken from the defendants' persons, or from the vehicle in which they were

driving. A Pietro-Beretta pistol recovered from the defendants' Cutlass, was, according to a government technician, the firearm from which the bullets aimed at Avila's vehicle were fired. The pistol taken from Harding was, according to other government witnesses, the firearm which was taken from the security guard during the robbery on December 23, 1994, of the Local Federal Bank in Oklahoma City.

The defendants were all interviewed by FBI agents, with Green and Berry declining to say anything. According to Agents Hunt and Tsiumis, Harding stated that he was approached on June 2, 1995 about doing a "job" in Guthrie for $3,000. Agent Tsuimis testified that Harding told him he received a telephone call on June 5, 1995 at about 8:30 a.m. and was picked up about 15 minutes later. After buying gas, Harding stated that he and the others drove to "Mother & the Boys' Restaurant," where he was given a firearm and a mask. According to Harding, they then drove to Bank IV in Guthrie, but when "something just looked wrong," they decided to leave Guthrie and were returning to Oklahoma City when arrested.

The government also established that all banks involved were federally insured. Also, Berry and Harding stipulated that each had suffered a felony conviction prior to their arrest on June 5, 1995.

After the government rested its case, the defendants called two witnesses: Jody Cooper, who could not recall ever telling the FBI agent that one of the robbers in the February 17, 1995, robbery of the Bank of Oklahoma was white; and Wanda Thomas,

who testified that she was with Green from 9:15 a.m. until 6:00 p.m. on December 23, 1994. Neither Green, Berry nor Harding testified. Harding did proffer the testimony of a psychiatrist, who, he said, was prepared to testify about Harding's diminished mental capacity, which proffer was denied by the district court.

<u>GREEN</u> and <u>BERRY</u>

The primary ground for reversal urged by both Green and Berry is that the district court erred in admitting Harding's post-arrest statements to FBI agents, which statements, according to counsel, necessarily implicated Green and Berry not only in the attempted robbery of Bank IV on June 5, 1995, but also implicated them in the robbery of the Local Federal Bank on December 23, 1994, when the security guard's pistol was forcibly taken from him. In so doing, according to counsel, the district court violated Green and Berry's Sixth Amendment confrontational rights. *See Bruton v. United States,* 391 U.S. 123 (1968). As above indicated, neither Green nor Berry made any post-arrest statements to FBI agents, but, as indicated, Harding did make post-arrest statements to Agents Hunt and Tsiumis.[2]

---

[2]Prior to trial, Green and Berry filed a motion in limine asking the district court to prohibit the government from introducing in its case-in-chief any post-arrest statement by Harding, which, in any way, implicated Green or Berry. At the hearing on that motion, the government stated that Harding had given no written statement to the FBI, only a verbal statement. After hearing counsel, the district court stated that it would reserve ruling on that matter and would consider it again when the FBI agents would be testifying concerning post-arrest statements made by Harding to the FBI. During trial, outside the presence of the jury, the government made a proffer to introduce a "redacted" version of Harding's post-arrest statements, which would include, *inter alia*, a statement by Harding

Agent Tsiumis, on direct examination, was asked one question concerning post-arrest statements made by Harding, which question, and Harding's answer thereto, were as follows:

> Q. The final item I'd like to ask you about is in reference to an interview in your presence with the defendant, Mr. Harding, and I'm going to direct your attention to June 5th, and sometime in the morning hours between 10:00 and 11:00, and I have one question, which is this: What, if anything, did the defendant, Lee Harding, say about Mother and the Boys' Restaurant?
>
> A. He told me we could find more evidence located in the back room of the restaurant.
>
> Q. And did you pass that information on to Special Agent Hunt?
>
> A. Yes, I did.

On cross-examination by Harding's counsel, Agent Tsiumis testified that Harding also told him that he received a telephone call on June 5, 1995, from "someone" who told him that he would be picked up about 8:30 a.m. that morning and that he was picked up by "someone" at about 8:45 a.m. Counsel for Green and Berry waived cross-examination of Agent Tsiumis.

At trial, as concerns post-arrest statements made by Harding, Agent Hunt testified that Harding, after having been verbally advised of his rights, but refusing to sign a

---

that he was "provided the gun and mask on June 5, 1995, for the robbery." Counsel's objection to that proffer was overruled.

- 10 -

consent statement, made certain statements to him.[3] In this connection, the following

colloquy occurred between government counsel and Agent Hunt:

> Q. (BY MR. RICHARDSON) My first question is this,
> Agent Hunt: What, if anything, did the defendant, Harding,
> tell you about the events of June 5th, 1995, in Guthrie?
>
> A. He indicated that on June the 2nd he had been approached and
> asked to go do a job in Guthrie. His share of the job would be
> $3,000.
>
> Q. And that was his words, "a job"?
>
> A. Yes.
>
> Q. What, if anything, did he tell you about the gun, the mask,
> and the gloves?
>
> A. He indicated those were given to him.
>
> Q. And when?
>
> A. On the morning of June the 5th.
>
> Q. And finally, what, if anything, did the defendant, Harding,
> say as to why he left Guthrie that morning?
>
> A. He indicated that something just looked wrong around the
> bank, and they decided to leave--he decided to leave.

Counsel for Green and Berry had limited cross-examination of Agent Hunt, as did

counsel for Harding. On re-direct examination, government counsel, *inter alia,* touched

---

[3]Prior to Agent Hunt's testimony, the district court instructed the jury that statements made by Harding to Agents Hunt and Tsiumis should only be considered as evidence "as it relates to the defendant, Mr. Harding, and not in any manner relating to any other defendant in this case."

briefly on post-arrest statements made by Harding. In this connection, that colloquy was as follows:

> Q. And then my final question is in reference to Mr. Harding and the questions that were asked by his attorney in reference to the gun, the mask, and the gloves that you've testified he got on June 5th. My question is simply this: Did he say where he got the gun, the gloves and the mask?
>
> A. The guns and the mask were given to him at the Mother and the Boys' Restaurant.

As indicated, counsel's primary argument in this court is that the Sixth Amendment confrontational rights of Green and Berry were violated by the testimony of Agents Hunt and Tsiumis concerning post-arrest statements made to them by Harding, which, according to counsel, tended to involve Green and Berry not only in the attempted robbery of Bank IV in Guthrie, Oklahoma, on June 5, 1995, but also involved them in the robbery of the Local Federal Bank in Oklahoma City on December 23, 1994. As the foregoing excerpts of the testimony of Agents Hunt and Tsiumis concerning the verbal post-arrest statements of Harding demonstrate, neither the name of Green nor Berry was mentioned by either agent. Such redaction is not enough, says counsel, who asserts that "the statement [of Harding] had identifiable indirect references which inevitably lead the jury to the defendants [Green and Berry]." According to counsel, "facial neutrality" is insufficient, and counsel asks this court to adopt the "contextual approach" which requires a court to look beyond the statement itself and determine if the statement made

by a non-testifying co-defendant, when "linked" with other evidence tends to incriminate the other defendants.

Prior to *Bruton, supra,* a post-arrest statement made by one defendant was admissible in evidence in a joint trial, even though such statement incriminated a co-defendant by name, so long as the jury was instructed that the statement, though constituting evidence against the declarant, was not to be considered as constituting any evidence against the co-defendant. *Delli Paoli v. United States,* 352 U.S. 232 (1957). *Bruton* changed that. In *Bruton,* the Supreme Court held that a defendant is deprived of the confrontation clause of the Sixth Amendment if a jury, despite instructions to the contrary, considers the extra-judicial statements of a non-testifying co-defendant which incriminates the complaining defendant.

In *Richardson v. Marsh,* 481 U.S. 200 (1987), the Supreme Court held that the confrontation clause of the Sixth Amendment was not violated by the admission of a non-testifying co-defendant's confession, assuming a limiting instruction, when "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211. In so doing, the Supreme Court reversed the Sixth Circuit which had adopted "the 'evidentiary linkage' or 'contextual implication' approach to *Bruton* questions . . . ." *Marsh v. Richardson,* 781 F.2d 1201 (6th Cir. 1986), *rev'd, Richardson v. Marsh,* 481 U.S. 200 (1987).

In *United States v. Chatman*, 994 F.2d 1510, 1513 (10th Cir. 1993), *cert. denied,* 510 U.S. 883 (1993) (citing *Richardson*, 481 U.S. at 211), we held that the denial by the district court of a motion to sever a defendant from the trial of his co-defendant whose post-arrest statements had incriminated him did not violate the confrontation clause where the statement had been redacted so as to eliminate the complaining defendant's name and the jury was given a limiting instruction. In so doing, we went on to reject the defendant's further contention that, even though his name had been redacted, he was still "linked" to his co-defendant's confession "by other evidence admitted at trial" and in connection therewith went on to say that "[t]his inferential incrimination argument is unavailing. . . ." *Chatman,* 994 F.2d at 1513. *See also United States v. Markopoulos,* 848 F.2d 1036, 1039 (10th Cir. 1988), where we spoke as follows:

> Since the statements at issue in this case were also only inferentially incriminating, we believe they satisfy the requirements set forth in Richardson and were properly admitted.

In *United States v. Williams,* 936 F.2d 698 (2d Cir. 1991), Williams claimed that his confrontation rights were violated when testimony by an FBI agent concerning a confession made by his co-defendant was admitted at their joint trial. The confession of his co-defendant had been redacted and references to Williams were replaced by words such as "another guy." However, Williams' own confession, which was also before the jury, interlocked with that of his co-defendant in such detail that the jury could easily

- 14 -

have concluded that Williams was the other "guy." In holding that Williams' confrontation rights were not violated, the Second Circuit spoke as follows:

> [1] Since Richardson, we have on several occasions admitted redacted confessions in which names of codefendants were replaced by neutral pronouns and "where the statement standing alone does not otherwise connect co-defendants to the crimes." These decisions have uniformly held that the appropriate analysis to be used when applying the Bruton rule requires that we view the redacted confession in isolation from the other evidence introduced at trial. If the confession, when so viewed, does not incriminate the defendant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant. This analysis is adopted directly from Richardson itself, and the principal extension of Richardson by our decisions is that they allow redacted confessions to refer to accomplices with neutral pronouns." (Citations omitted.)

*Id.* at 700.

Counsel for Green and Berry argues that it was error to admit Harding's post-arrest statement, even though redacted so as to not include any mention of either Green or Berry by name. In thus arguing, counsel asserts that Harding's post-arrest statement should not be viewed "in isolation." According to counsel, the statement, when viewed in context with other evidence, linked Green and Berry not only to participation in the attempted robbery of Bank IV in Guthrie on June 5, 1995, but also linked Green and Berry to the robbery of the Local Federal Bank in Oklahoma City on December 23, 1994, since the firearm found on Harding on June 5, 1995, was the firearm taken from the security guard

in the Local Federal Bank robbery on December 23, 1994.[4]  We do not agree with this argument.  The district court did not err in admitting this testimony of Agents Hunt and Tsiumis.  We believe our disposition of this particular matter does not violate *Bruton,* and is consistent with the rationale of *Richardson, Chatman, Markopoulos* and *Williams.*

In Count 5, Green was charged with knowingly carrying a firearm on June 5, 1995, during and in relation to a crime of violence, namely, attempted robbery of a federally insured bank.  In Count 7, Berry was also charged with carrying a firearm on June 5, 1995, during and in relation to a crime of violence, namely, attempted robbery of a federally insured bank.[5]  Both of these counts were related to the so-called attempted robbery on June 5, 1995, of Bank IV in Guthrie.  As above indicated, Green, Berry and Harding were charged in Count 4 with an attempt to enter and rob on June 5, 1995, Bank IV of Guthrie, Oklahoma, a federally insured bank, each of the three defendants then and

---

[4]Harding was not charged with the robbery of Local Federal Bank on December 23, 1994.

[5]18 U.S.C. § 924(c)(1) provides as follows:
   (c)(1) Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.

there having an intent to commit bank robbery by force, violence and intimidation. There was no mention in Count 4 of the use of any firearm.

In line with 18 U.S.C. § 924(c)(3), the district court instructed the jury as follows:

**INSTRUCTION NO. 28**

**18 U.S.C. § 924(c)(1) --DEFINITIONS**

The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involved a substantial risk that such physical force may be used in committing the offense. <u>You are instructed that the offense alleged in Count Four of the indictment, attempted bank robbery, is a crime of violence</u>.

The phrase "uses or carries a firearm" means having a firearm available to assist or aid in the commission of the crime alleged in Count Four of the indictment.

"During and in relation to" a crime of violence means that the firearm had some relation to or some connection to the underlying crime. (Emphasis added.)

On appeal, Green and Berry, as well as Harding, all argue that the district court erred in giving the aforementioned instruction and, here, all focus on the underlined portion of the instruction. They argue that the district court erred in instructing the jury that the offense charged in Count 4 is a "crime of violence" as that term is used in 18 U.S.C. § 924(c)(1). Counsel for Green and Berry concedes that, although trial counsel did object to the aforesaid instruction, the basis for the objection in the trial court is not the basis urged on appeal. In such circumstances, counsel for Green and Berry concludes that she must show "plain error." For reasons set forth, *supra,* we do not find plain error.

- 17 -

We note, parenthetically, that trial counsel for Harding did object to the underlined portions of the aforesaid instruction on the ground that "I don't believe that it would be appropriate to instruct them, as a matter of law, that Count 2 [sic . . . it was later corrected to read Count 4] is a crime of violence." In this court the basic position of Green and Berry, as well as Harding, is that the district court erred in instructing the jury that as a matter of law the "offense alleged in count four. . . is a crime of violence." We disagree. Count 4 alleged, *inter alia,* that all three defendants attempted to enter and rob Bank IV "by force, violence and by intimidation." Such is sufficient to support an instruction that the offense <u>alleged</u> in Count 4 is a crime of violence to bring it within 18 U.S.C. § 924(c)(3). The jury, under the circumstances, should not be allowed to speculate on whether Count 4 <u>charges</u>  a crime of violence. It does.

Green and Berry also argue that the evidence is legally insufficient to support their conviction on Count 4 which charged them with an attempt to enter and rob Bank IV on June 5, 1995.[6] Their argument is that "casing" Bank IV on June 2, 1995, and going to Bank IV

---

[6]Count 4 reads as follows:
  That on or about June 5, 1995, at Guthrie, Oklahoma, in the Western District of Oklahoma, WILLIAM LEROY HARDING, ERIC DEVON GREEN, and VINCENT BERRY, the defendants herein, did with intent to commit bank robbery by force, violence and by intimidation, attempt to enter and rob Bank IV, Broad and Cleveland Street, Guthrie, Oklahoma, the deposits of which were then insured by the Federal Deposit Insurance Corporation,
  All in violation of Title 18, United States Code, Sections 2113(a).

on June 5, 1995, with firearms and masks were only "mere preparation" and did not constitute a "substantial step" towards the commission of a robbery of Bank IV.

In our view, *United States v. Prichard,* 781 F.2d 179 (10th Cir. 1986), is a complete answer to this argument, and counsel's efforts to distinguish *Prichard* are unavailing. In *Prichard*, we held that "reconnoitering of the object of a crime and the collecting of the instruments to be used in that crime, together, can constitute a substantial step." *Id.* at 181. Here, Green and Berry did "reconnoiter" the object of the crime and did collect "instruments" to be used in the crime. The fact that when they arrived at Bank IV on June 5, 1995, things didn't look right and they decided not to enter the bank does not mean that they were not guilty of an "attempt to enter and rob."

Green and Berry next argue that their convictions on Counts 5 and 7 must be reversed because "there was insufficient evidence of an underlying crime of violence." We have already held that Count 4 <u>charged</u> a crime of violence, and in our view the evidence is sufficient to support the jury's determination that they were, in fact, guilty of the crime charged.

HARDING

Harding's initial argument in this court is that the district court erred in denying his pre-trial motion to suppress the use at trial of the firearms and clothing taken from the Oldsmobile Cutlass when it was stopped by the FBI agents on June 5, 1995. The basis for the motion was counsel's belief that the arrest of Harding, as well as Green and Berry, was

unlawful since it was not based on probable cause. A hearing was held on this motion and the district court denied the motion, holding that the FBI agents at the time of the arrest had probable cause to believe that the three had conspired to rob Bank IV in Guthrie. We agree. The facts of the present case are strikingly similar to the facts in *United States v. Williams,* 10 F.3d 1070 (4th Cir. 1993), *cert. denied* 513 U.S. 926 (1994), where the Fourth Circuit found probable cause to make a warrantless arrest.

Prior to trial, Harding asked that his trial be severed from that of Green and Berry. The basis for the motion was that Green and Berry were charged in two counts of the nine-count indictment with robberies wherein Harding was not named as a defendant. After hearing, the motion was denied. We find no abuse of discretion. Defendants jointly charged are not entitled to separate trials as a matter of right. *Bailey v. United States,* 410 F.2d 1209, 1213 (10th Cir.), *cert. denied* 396 U.S. 933 (1969). The fact that Harding was not a defendant in every court of the nine-count indictment did not mandate that his trial be separate from the others. *Id.* Green and Berry were not themselves named in every count of the indictment. The general rule is that persons who are indicted together should be tried together. *United States v. Edwards,* 69 F.3d 419, 434 (10th Cir. 1995), *cert. denied,* 116 S.Ct. 2497 (1996). *See also United States v. Youngpeter,* 986 F.2d 349 (10th Cir. 1993). And the fact remains that all three were arrested together on June 5, 1995, when returning from Bank IV.

In jury selection, the government used one of its peremptory challenges on an Afro-American. Counsel asked the government to state its reasons for the challenge. The government stated that the reason for the challenge was that the prospective juror on *voir dire* had stated that he had two sons who had been "in trouble with the law," one of whom had been convicted of armed robbery. The challenge was upheld by the district court as, under the circumstances, being "racially neutral." We find no error. This case is distinguishable from *Batson v. Kentucky,* 476 U.S. 79 (1986). The juror was not challenged because he was Afro-American, but because of his answers on *voir dire* concerning his sons' brushes with the law. *See also United States v. Sneed,* 34 F.3d 1570, 1578-80 (10th Cir. 1994).

For reasons set forth above, we reject Harding's suggestion that the evidence is insufficient to sustain his conviction for conspiracy, attempted robbery, and carrying a firearm during and in connection with a crime of violence. Nor are we impressed with counsel's suggestion that the district court erred in not instructing the jury on multiple conspiracies.

Other matters raised on appeal by the defendants are deemed to be without merit.

Judgments affirmed.