F I L E D
United States Court of Appeals
Tenth Circuit

AUG 2 1999

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 98-8099

JOSE AURELIO VERDUZCO-MARTINEZ,
also known as Federico Nunez,

Defendant-Appellant.

Appeal from United States District Court
for the District of Wyoming
(D.C. No. 97-CR-127-01-B)

Harry G. Bondi of Harry G. Bondi Law Offices, P.C., Casper, Wyoming, for the appellant.

John A. Masterson, Assistant United States Attorney, Casper Wyoming, and David D. Freudenthal, United States Attorney, District of Wyoming, for the appellee.

Before **BALDOCK**, **BARRETT**, and **BRORBY**, Circuit Judges.

**BARRETT**, Senior Circuit Judge.

After examining the briefs and the appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Jose Aurelio Verduzco-Martinez (Verduzco-Martinez) appeals his convictions for conspiracy

to possess with intent to distribute and to distribute methamphetamine and attempt to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 21 U.S.C. § 846.

Facts

On October 29, 1997, Rafael Victor Torres Andrade (Andrade) and Verduzco-Martinez purchased a one-way airline ticket for Andrade on a flight from Casper, Wyoming to Los Angeles, California. Verduzco-Martinez accompanied Andrade to the Natrona County International Airport in Casper, Wyoming. Andrade then flew to Los Angeles and picked up a van to drive back to Wyoming.

On October 30, 1997, at 3:54 a.m., the California Highway Patrol stopped Andrade for failure to have a working rear license plate light. After Andrade received a verbal warning for the license plate light, he consented to the search of the van. During the search, the officers observed duct-taped packages hidden in the cowling of the van beneath the windshield wipers that the officers believed to contain methamphetamine. Andrade was then arrested for possession of illegal narcotics. Seven packages were recovered from the van containing approximately 3.2 kilograms of methamphetamine.

At the Barstow Police Department, Andrade verbally waived his *Miranda* rights and told the investigating officer, Deputy Silva, that he was being paid $2,000 to drive the van from Los Angeles, California, to Casper, Wyoming, plus an additional $450 in expense money. (ROA, Vol. 4 at 105, 109.) He also told Officer Silva that he knew he was transporting "crank" or methamphetamine. *Id*. at 109, 112. Andrade then agreed to make a controlled delivery of the van in Wyoming.

Once in Casper, Andrade called the telephone number he had been given prior to the trip and spoke with "Nene." Andrade then delivered the van to 1831 Boxelder Street. Upon arrival, Andrade

honked the horn and Verduzco-Martinez came out of the residence. Verduzco-Martinez and Andrade discussed the van and Verduzco-Martinez received the key to the van. They were arrested as they attempted to leave the area.

On November 20, 1997, the grand jury indicted Verduzco-Martinez on charges of conspiracy to possess with intent to distribute and to distribute methamphetamine and attempt to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 21 U.S.C. § 846. *Id.* Vol. 1 at Tab 19. Following a hearing on June 22, 1998, the district court found Verduzcvo-Martinez competent to stand trial. *Id.* at Tab 93. The district court found that Verduzco-Martinez did not suffer from a mental disease or defect rendering him mentally incompetent, had a factual and rational understanding of the proceedings against him, and was able to properly assist in his defense. *Id.*

In August, 1998, Verduzco-Martinez and Andrade were tried together. On August 17, 1998, the jury found Verduzco-Martinez guilty on all counts. *Id.* at Tab 132. He was sentenced to the mandatory minimum of 120 months imprisonment. *Id.* at Tab 151.

On appeal, Verduzco-Martinez contends that: (1) the district court erred in finding him competent to stand trial, (2) the admission of Andrade's redacted statements violated his Sixth Amendment right to confrontation, and (3) the evidence was insufficient to support his conviction.

Discussion

I. Competency

Verduzco-Martinez contends that the evidence taken at the competency hearing on June 22, 1998, was insufficient to establish he was competent to stand trial. Verduzco-Martinez points out that he tested at an extremely low level of intellectual functioning and asserts that Dr. Ihle placed too

much emphasis on his ability to function in society in reaching the conclusion that he was capable of understanding the criminal trial process and the legal concepts involved.

"Competency to stand trial is a factual determination that can be set aside only if it is clearly erroneous." *United States v. Boigegrain*, 155 F.3d 1181, 1189 (10th Cir. 1998) (citing *United States v. Crews*, 781 F.2d 826, 833 (10th Cir. 1986)), *cert. denied*, ___ U.S. ___ (1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). *See Exxon Corp. v. Gann*, 21 F.3d 1002, 1005 (10th Cir. 1994). The district court need not be correct, but its finding must be permissible in light of the evidence. *Bill's Coal Co., Inc. v. Board of Pub. Util. of Springfield, Mo.*, 887 F.2d 242, 244 (10th Cir. 1989).

Competency involves the defendant's mental state at the time of trial. "[T]he criminal prosecution of an accused person while legally incompetent offends the Due Process Clause of the Fourteenth Amendment." *United States v. Williams*, 113 F.3d 1155, 1159 (10th Cir. 1997) (citing *Bishop v. United States*, 350 U.S. 961 (1956); *Pate v. Robinson*, 383 U.S. 375, 385 (1966)). "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings." *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993). "Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." *Id.* at 402. "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1966). To be

competent to stand trial, a defendant must have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "'a rational as well as factual understanding of the proceedings against him.'" *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "'In making a determination of competency, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment.'" *Boigegrain*, 155 F.3d at 1189 (quoting *United States v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995)). *See Williams*, 113 F.3d at 1159.

During the June 22, 1998, competency hearing, the district court heard the testimony of Dr. Ihle who examined Verduzco-Martinez and administered intellectual functioning tests. (ROA, Vol. 2 at 137.) Dr. Ihle testified that due to the Anglo-Saxon cultural bias of the verbal portion of the intellectual functioning test, he gave Verduzco-Martinez only the performance section and a test of nonverbal intelligence. *Id.* at 137-38. Verduzco-Martinez showed low intellectual functioning on the performance test, scoring in the lower five percent of people given the test. *Id.* at 148. Dr. Ihle testified, however, that "even though [Verduzco-Martinez] evidenced some deficits in intellectually functioning from the tests and some of the evaluation process," he was competent to stand trial. *Id.* at 140. Dr. Ihle noted that despite his low intellectual functioning, Verduzco-Martinez functioned well in society, i.e., had a driver's license, assisted his wife with finances, and worked. *Id.* at 140, 151. Dr. Ihle testified that Verduzco-Martinez's "intellectual deficits did not seem to significantly impair his ability to learn and work with some of the legal issues" and that Verduzco-Martinez was able to logically talk about his behavior and the circumstances surrounding the relevant time period, to articulate what he was charged with, and to discuss a felony versus a misdemeanor. *Id.* at 141. Verduzco-Martinez was also able to discuss confidentiality with his attorney, issues related to

participants in the courtroom, his attorney, what his attorney was going to do during trial, and what his role in the courtroom was, i.e., to listen to witnesses and look for errors. *Id.* 141-42.

We agree with the district court that Verduzco-Martinez, although of limited intellectual functioning, was competent to stand trial. The district court did not place undue emphasis on Verduzco-Martinez's ability to function in society. There is nothing in the record to contradict Dr. Ihle's testimony that Verduzco-Martinez was capable of understanding the trial process and assisting his attorney. Thus, we hold that the district court was not clearly erroneous in finding Verduzco-Martinez competent to stand trial. *See Miles v. Dorsey*, 61 F.3d 1459, 1472 (10th Cir. 1995) ("'The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to . . . assist in his own defense.'") (quoting *Wolf v. United States*, 430 F.2d 443, 444 (10th Cir. 1970)), *cert. denied*, 516 U.S. 1062 (1996).

## II. Coconspirator's Statements

Verduzco-Martinez contends that the admission at trial of codefendant Andrade's redacted statements through the testimony of Officer Silva violated his Sixth Amendment right to confront and cross-examine witnesses against him. Verduzco-Martinez asserts that Andrade's redacted statements cannot be reasonably understood to refer to anyone other than himself when viewed in the context of the evidence as a whole and cannot be harmless error. We review *de novo* the legal issue of whether the admission of the non-testifying codefendant's statements/confession in a joint trial violated the defendant's Sixth Amendment right to confrontation. *United States v. Edwards*, 159 F.3d 1117, 1125 n.4 (8th Cir. 1998). *See Hatch v. State of Okla.*, 58 F.3d 1447, 1467 (10th Cir. 1995) (Confrontation Clause claim reviewed *de novo*).

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that the Sixth

Amendment right to confront adverse witnesses is violated if the defendant's non-testifying codefendant makes an extrajudicial confession that implicates the defendant and the Government introduces the confession into evidence at their joint trial, even if the jury is instructed to consider the confession only against the codefendant. *See United States v. Glass*, 128 F.3d 1398, 1403 (10th Cir. 1997); *United States v. Hill*, 901 F.2d 880, 883 (10th Cir. 1990). In *Bruton*, a postal inspector testified that Bruton's codefendant had confessed both his own and Bruton's involvement in an armed postal robbery and the trial court gave a limiting instruction instructing the jury to consider the confession only against the codefendant. *Id*. at 124-25. The Court found that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. . . . Such a context is present here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." *Id*. at 135-36.

In *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), the Court held that there was no *Bruton* violation where the non-testifying codefendant's statement was redacted to remove all reference to the defendant and/or his existence and the jury was given a proper limiting instruction. The Court explained that although the defendant was linked to the statement by other properly admitted evidence, the statement did not violate *Bruton* because " the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial." *Id*. at 208. The Court distinguished *Bruton* wherein the codefendant's confession "'expressly incriminated' the defendant as his accomplice." *Id*. (quoting *Bruton*, 391 U.S. at 124 n.1).

Recently, in *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151 (1998), the Court revisited the

issue of redacted codefendant statements in joint trials. In *Gray*, the confession had been redacted to remove the defendant's name, but his name had been replaced with a blank space in the written confession and the word "deleted" in the oral testimony. Thus, unlike the statements in *Richardson*, which removed not only the defendant's name but any reference to the defendant's existence, the confession in *Gray* referred directly to the existence of the non-confessing defendant. *Id*. at 1155. The Court held that "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indication of alteration, . . . leave statements that, considered as a class, so closely resemble Bruton's unredacted statements that, . . . the law must require the same result." *Id*. at 1155. These type of substitutions do not make a legal difference and *Bruton*'s protective rule applies.[1] *Id*. at 1153. The Court noted that the inferences at issue in *Gray* "involve[d] statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve[d] inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id*. at 1157. "Like the confession in Bruton itself, the accusation that the redacted confession makes 'is more vivid than inferential incrimination, and hence more difficult to thrust out of mind.'" *Id*. (quoting *Richardson*, 481 U.S. at 208). "[T]he redacted confession with the blank prominent on its face . . . 'facially incriminat[es]' the codefendant." *Id*.

The only statements in the record that were redacted to remove references to Verduzco-

---

[1]     The Court also noted that it "has assumed . . . that nicknames and specific descriptions fall inside, not outside, Bruton's protection. See Harrington v. California, 395 U.S. 250, 253, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969) (assuming Bruton violation where confessions describe codefendant as the "white guy" and gives a description of his age, height, weight, and hair color)." *Gray*, 118 S.Ct. at 1156. *See e.g. United States v. Gillam*, 167 F.3d 1273, 1277 (9th Cir. 1999) (redaction with "someone who worked at the FDA . . . who was getting ready to retire" violated *Bruton* and *Gray*).

Martinez's alleged alias "Federico" were those of Officer Silva. *See* ROA, Vol. 2 at 109-114. Officer Silva was advised by the Government to substitute the neutral pronoun "another person" where Andrade referred to "Federico" in his statements to her. At trial, Officer Silva testified that Andrade told her that "he was being paid by *another person* to drive the van to Casper, Wyoming," and that "*another person* had paid for the flight from Casper, Wyoming to LAX." (ROA, Vol. 4 at 105 and 109 (emphasis added).)

As redacted, Andrade's statements do not clearly violate *Bruton,* inasmuch as Verduzco-Martinez is not mentioned by name, alias, or description, nor do they clearly fall within *Gray,* as the redaction did not result in a blank space or a "deleted" in the testimony. Andrade's redacted statements are more akin to those discussed in *Richardson*. However, unlike *Richardson*, the redaction did not remove all evidence of the existence of a coconspirator. Thus, we must determine whether the substitution of a neutral pronoun or phrase in place of Verduzco-Martinez's alleged alias so closely resembles the statements in *Gray* that it violates *Bruton*'s protective rule. We hold that it does not.

We hold that where a defendant's name is replaced with a neutral pronoun or phrase there is no *Bruton* violation, providing that the incrimination of the defendant is only by reference to evidence other than the redacted statement and a limiting instruction is given to the jury. Where, however, it is obvious from consideration of the confession as a whole that the redacted term was a reference to the defendant, then admission of the confession violates *Bruton*, regardless of whether the redaction was accomplished by use of a neutral pronoun or otherwise. *See United States v. Akinkoye*, 174 F.3d 451, 457 (4th Cir. 1999) (use of neutral phrases "another person" and "another individual" did not facially implicate defendant and did not violate *Bruton*); *United States v. Vejar-*

*Urias*, 165 F.3d 337, 340 (5th Cir. 1999) (use of "someone" violated *Bruton* where it clearly meant the defendant when considering the codefendant's "out of court inculpatory statements, i.e., confession, without reference to other evidence"); *Edwards*, 159 F.3d at 1125-26 (use of pronouns in redacted statement did not violate *Bruton* where it was not obvious who pronouns referred to and limiting instruction given); *United States v. Peterson*, 140 F.3d 819, 821-22 (use of "person X" violated *Bruton* because reference to defendant was obvious, there was no limiting instruction given, and prosecutor referred to defendant as "person X" in closing argument). The Supreme Court indicated its approval of redaction with non-identifying pronouns in *Gray* when it asked why the statements could not have been redacted to read "Me and a few other guys" instead of "Me, deleted, deleted, and a few other guys." *Gray*, 118 S.Ct. at 1157. This type of redaction avoids the problems the Court noted in *Gray*. *See id*. at 1157. "[R]eferring to joint activity by use of the pronouns 'we' and 'they,' or by use of indefinite words such as 'someone,' does not draw attention to the redaction and thus, in most situations, will not be incriminating unless linked to a codefendant by other trial evidence." *Edwards*, 159 F.3d at 1126.

Considering Andrade's redacted statements as a whole, the use of the neutral pronoun/phrase "another person" did not identify Verduzco-Martinez or direct the jury's attention to him, nor did it obviously indicate to the jury that the statements had been altered. Although it is possible to infer that the "another person" referred to is Verduzco-Martinez, it is not an inference that can be made immediately from the statements alone or without additional evidence. The inferences connecting Verduzco-Martinez to Andrade's redacted statements could be made only after additional evidence was considered. In fact, Verduzco-Martinez linked himself to the redacted statements in his testimony when he testified that: he talked to Andrade about getting the van from California for him,

ROA, Vol. 6 at 9, he was paying Andrade to drive the van to Wyoming, *id*. at 14, he accompanied Andrade to the travel agency to purchase the airline ticket, *id*. at 15, he gave Andrade money for the ticket to California and for expenses, *id*. at 10, 14-15, and he took Andrade to the airport, *id*. at 15. As we noted in *United States v. Green*, "'[i]f the confession . . . does not incriminate the defendant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant.'" *Green*, 115 F.3d 1479, 1484 (10th Cir. 1997) (quoting *United States v. Williams*, 936 F.2d 698, 700 (2d Cir. 1991)), *cert. denied*, ___ U.S. ___ (1998). *See e.g. Richardson*, 481 U.S. at 204 (redacted confession removed reference to a third person being in the car with the confessing codefendant and absentee codefendant, but defendant then testified to being present in the back seat of the car); *United States v. Markopoulos*, 848 F.2d 1036, 1039 (10th Cir. 1988) (statements that the codefendant "was headed for Virginia and had been paid to transport another load of marijuana to Virginia" did not violate the defendant's right to confrontation "[s]ince the statements . . . were also only inferentially incriminating"). The fact that Andrade's redacted statements may have inferentially incriminated Verduzco-Martinez when read in context with other evidence does not create a *Bruton* violation.

Therefore, we hold that admission of Andrade's redacted statements through Officer Silva's testimony did not violate Verduzco-Martinez's Sixth Amendment right to confrontation or *Bruton*'s protective rule.

### III. Sufficiency of the Evidence

Verduzco-Martinez contends that the evidence presented at trial was insufficient to sustain his convictions. He asserts that there was no evidence of a conspiracy, knowledge, or intent without the improperly admitted confession of Andrade; the evidence of knowledge is extremely

circumstantial, consisting of a catalogue of facts which by themselves are innocuous; and no intent to distribute a controlled substance can be inferred from the evidence presented at trial.

The sufficiency of the evidence is a question of law which we review *de novo*. *United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997), *cert. denied*, ___ U.S. ___ (1998). In reviewing the record, we view the evidence and the reasonable inferences to be drawn therefrom in a light most favorable to the government, without weighing the evidence or considering the credibility of witnesses. *United States v. Haslip*, 160 F.3d 649, 652-53 (10th Cir.1998), *cert. denied*, ___ U.S. ___ (1999).

Although there is evidence that Verduzco-Martinez accompanied Andrade to the airport on October 29, 1997, and that he knew Andrade's flight itinerary,[2] the majority of the Government's evidence linking Verduzco-Martinez to the methamphetamine came from the two tape recorded conversations–the phone call from Andrade to "Nene" (Verduzco-Martinez) regarding delivery of the van and the conversation between Andrade and Verduzco-Martinez outside Verduzco-Martinez's residence. The translations and transcriptions of the tape recordings, which were in Spanish, were admitted in evidence during the Government's case-in-chief. (ROA, Vol. 5 at 79.) However, Verduzco-Martinez failed to provide us with these translations and transcriptions, even though it is his obligation to ensure the proper composition of the record on appeal. 10th Cir. R. 10.3 ("[I]t is counsel's responsibility to see that the record on appeal is sufficient for consideration and determination of the issues on appeal."); Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence,

---

[2]     A "sticky" note with Andrade's name and some of his flight information on it was found in Verduzco-Martinez's residence. (ROA, Vol. 5 at 98.)

- 12 -

the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion."). Without the majority of the evidence regarding Verduzco-Martinez and his participation in this offense, we are unable to determine whether there was insufficient evidence to sustain his convictions. Thus, we dismiss Verduzco-Martinez's appeal as to the sufficiency of the evidence. *See Richardson v. Henry*, 902 F.2d 414, 416 (5th Cir. 1990) ("The failure of an appellant to provide a transcript is a proper ground for dismissal of the appeal. Accordingly, the appeal as to the sufficiency of the evidence will be dismissed.") (internal citations omitted), *cert. denied*, 498 U.S. 1069 (1991).

For the foregoing reasons, we DISMISS IN PART and AFFIRM Verduzco-Martinez's convictions for conspiracy to possess with intent to distribute and to distribute methamphetamine and attempt to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 21 U.S.C. § 846.

**AFFIRMED** and **DISMISSED IN PART**.