**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 2, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOAN OSBORN,

    Defendant - Appellant.

No. 15-4165
(D.C. No. 2:15-CR-00107-WPJ-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

    After a hearing, the district court found Joan Osborn incompetent to stand trial and temporarily committed her to the Attorney General's custody under 18 U.S.C. § 4241(d) for treatment and a determination of whether competency could be restored. In this interlocutory appeal, Osborn challenges both the district court's allocation of the burden of proof at the hearing and its ultimate competency determination. We decline to consider Osborn's burden-of-proof argument because she raises it for the first time on appeal and makes no attempt to satisfy our test for plain error. And we conclude the district court's competency determination isn't clearly erroneous. Accordingly, we affirm.

_____

[*] This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

## BACKGROUND

After indicting Osborn on one count of threatening to assault and murder a federal judge in violation of 18 U.S.C. § 115(a)(1)(B), the government moved for an evaluation of Osborn's competency to stand trial and of her sanity at the time of the alleged offense. The district court granted the motion. *See* 18 U.S.C. §§ 4241, 4242.

Dr. Lesli Johnson, a forensic psychologist, evaluated Osborn and submitted her written findings to the court. As Osborn's competency hearing commenced, Osborn informed the district court that she "no longer wish[ed] to have legal defenders as [her] counselor." R. vol. 3, 12. The court advised Osborn it would take that matter up later.

The government then called Johnson as its sole witness. Johnson testified that Osborn possesses average intelligence and understands the nature and consequences of the proceedings against her. Specifically, Johnson testified that Osborn adequately described the roles of key courtroom players; understood the charge against her and her constitutional rights; understood the difference between pleas of guilty, not guilty, and not guilty by reason of insanity; and explained the difference between a jury trial and a bench trial.

But Johnson also diagnosed Osborn with delusional disorder and explained that Osborn exhibits persecutory and grandiose delusions. For example, Johnson described Osborn's belief that the United States government and mental health providers are "out to get her" and "harm her," and that several presidents and other government officials have raped her in the past. *Id.* at 29. According to Johnson,

Osborn characterizes herself as a prolific writer; and claims she developed the Minnesota Multiphasic Personality Inventory, received an honorary Ph.D. at age 14, and wrote several well-known songs. Johnson said Osborn also believes that she is "Christ" and has had "approximately 40 immaculate conceptions from the Virgin Mary and Jehovah." *Id.* at 29–30.

Johnson opined that Osborn's delusional disorder could affect her ability to assist in her own defense. Johnson admitted that she didn't know the elements of the charged offense and didn't know what type of information Osborn would need to provide defense counsel to assist in her defense. Nevertheless, Johnson testified that to assist in her defense, Osborn would need to converse with defense counsel "without introducing delusional thought content," *id.* at 60, and to participate rationally in decisions regarding her case.

Johnson conceded that Osborn could likely follow her counsel's advice regarding whether to take a plea or go to trial. But Johnson opined that because of Osborn's expressed desire to introduce her delusions as part of her defense strategy, it was also likely that Osborn would have difficulty participating in a defense strategy that didn't include advising the court about her delusions, even if defense counsel offered a more rational defense strategy. Johnson predicted that the stress of a trial could aggravate Osborn's delusions and that it was unlikely that Osborn could contain those delusions throughout the court proceeding. Johnson recommended Osborn undergo competency restoration for a period of up to four months.

Through cross-examination of Johnson, Osborn's defense counsel established her own interactions with Osborn and questioned Johnson as to whether that information would change Johnson's opinion regarding Osborn's ability to assist in her own defense. For example, defense counsel characterized this case as a "very simple case" involving only three elements, and proffered that she had no trouble discussing legal issues with Osborn. *Id.* at 34. Further, according to defense counsel, Osborn didn't inject any delusional thoughts in her discussions with counsel and Osborn agreed that if she testified, she wouldn't discuss her allegations that she had been raped by past presidents.

Despite defense counsel's proffer, Johnson maintained her opinion that Osborn was incompetent. According to Johnson, even with medication, Osborn likely would always have delusions, but medication could diminish those delusions while increasing Osborn's positive behavior and ability to cooperate.

Before the hearing concluded, the district judge excused the prosecution team and met ex parte with Osborn and her counsel to discuss her request for new counsel. When court resumed, the court informed the parties that it had determined it would be in Osborn's best interest for her current defense counsel to continue representing Osborn.

In a subsequent written decision, the district court found Osborn incompetent to stand trial and ordered her hospitalized for up to four months for competency restoration. In its decision, the court noted that neither party contested Johnson's assessment that Osborn could understand the nature and consequences of the

4

proceedings against her. But the court concluded that the government established Osborn's incompetence by a preponderance of the evidence because the persistent nature of Osborn's delusions made it unlikely that she could properly assist defense counsel.[1]

Significantly, in its written decision, the district court also relied on firsthand observations from its ex parte meeting with Osborn. The court pointed out that during that meeting, Osborn requested to be represented by a different attorney who Osborn claimed had previously led her to a legal victory against former President George W. Bush. And immediately following that request, Osborn advised the court that the federal judge she had allegedly threatened to murder had visited her in jail, accompanied by a hitman. Finally, the court noted that Osborn transitioned from the hitman story to a discussion of genital mutilation—a subject of Osborn's previous delusions.

Osborn appeals the district court's competency determination.[2] We have jurisdiction under 28 U.S.C. § 1291. *See United States v. Boigegrain*, 122 F.3d 1345, 1349 (10th Cir. 1997) (en banc) (explaining that commitment orders issued under § 4241(d) are immediately appealable as final pursuant to collateral order doctrine).

---

[1] In addition to the persistent nature of Osborn's delusions, the court expressed concern that if the case proceeded to trial and a jury found against Osborn, the government might then have to defend a 28 U.S.C. § 2255 challenge asserting defense counsel provided ineffective assistance by taking the case to trial knowing of Osborn's incompetency.

[2] The district court granted Osborn's emergency motion to stay execution of the competency and commitment order pending the outcome of this appeal.

DISCUSSION

Osborn first argues that the district court erred in placing the burden of proof on the government to show incompetency. She asserts that defendant must carry the burden of proof to demonstrate incompetency because the consequences of being found incompetent—forced hospitalization and possibly forced medication and lifetime civil commitment—are severe. Osborn suggests that because she had the burden of proof and because she neither moved for the competency hearing nor presented evidence in support of an incompetency finding, the district court erred in permitting the government to present evidence or argue that she was incompetent to stand trial.

But as the government points out, Osborn failed to raise this argument below. The government contends that under these circumstances, we need not review the issue at all, but that if we do, we should review only for plain error. Osborn responds that de novo review is appropriate because she didn't have an opportunity to object to the district court's burden-of-proof allocation before the district court entered its written order finding Osborn incompetent.

But the hearing transcript belies Osborn's suggestion that she lacked the opportunity to object before the district court entered its order.[3] Therefore, plain-error

---

[3] At the competency hearing, the court invited the government to proceed with testimony. At the government's request and without objection from defense counsel, the court admitted Johnson's report. The government then called Johnson as its sole witness, again without objection from Osborn. Before defense counsel cross-examined Johnson, the court stated, "I'm going to let counsel have a lot of leeway on this since it is not clear, certainly you know what the standard of proof is but it's not clear which side has the burden of proof in this case." R. vol. 3, 41–42. Defense

review is appropriate. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). Yet Osborn doesn't argue that the district court plainly erred in failing to apply her novel burden-of-proof theory. And that failure "surely marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131. Accordingly, we decline to consider whether the district court erroneously allocated the burden of proof to the government.

Osborn next contends the district court clearly erred in determining she was incompetent because the court (1) ignored defense counsel's proffers and considered inappropriate factors, and (2) reached a competency determination not supported by a preponderance of the evidence.[4]

The test for competency is well settled: "A defendant may not be put to trial unless he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.'" *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)); *see also* 18 U.S.C. § 4241(d); *McGregor v. Gibson*, 248 F.3d 946, 957 (10th Cir. 2001) (en banc).

---

counsel responded, without objection, "It is not [clear]," *id.*, and proceeded with cross-examination.

[4] 18 U.S.C. § 4241(d) permits the district court to make a finding of incompetency only if "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

We review de novo the district court's application of the competency test. *Lafferty v. Cook*, 949 F.2d 1546, 1550 (10th Cir. 1991). We review a district court's factual determination as to a defendant's competency for clear error. *United States v. DeShazer*, 554 F.3d 1281, 1286 (10th Cir. 2009). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Mackovich*, 209 F.3d 1227, 1232 (10th Cir. 2000) (quoting *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1211 (10th Cir. 1999)). We assume, as the district court did, that under these circumstances the government had the burden to prove Osborn's incompetence.

When assessing competency, a district court may consider various factors including "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1234–35 (10th Cir. 2009) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). But the standard doesn't require the complete absence of irrational or bizarre thoughts or behavior. *See, e.g.*, *DeShazer*, 554 F.3d at 1286 ("That a defendant suffers from some degree of mental illness or disorder does not necessarily mean that he is incompetent to assist in his own defense."); *Wolf v. United States*, 430 F.2d 443, 445 (10th Cir. 1970) ("The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to knowingly and voluntarily enter a plea as well as aid and assist in his own defense.").

Johnson testified, and neither party contested, that Osborn possessed a rational and factual understanding of the proceedings. Accordingly, the district court properly focused on whether Osborn had the ability to assist in her own defense. To be legally competent on this point, a defendant must have a "sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding." *Cooper*, 517 U.S. at 354 (quoting *Dusky*, 362 U.S. at 402).

Osborn argues the district court erred in failing to consider or give proper weight to defense counsel's proffers demonstrating that Osborn was able to assist defense counsel. The government counters that the court did consider defense counsel's proffers, but simply didn't find them persuasive in light of Johnson's testimony.

The record reflects that the district court didn't ignore defense counsel's proffers. Instead, it noted those proffers but found it likely that the persistent nature of Osborn's mental illness and delusions would interfere with Osborn's ability to assist counsel in formulating a defense strategy or deciding whether to testify in her own defense. Moreover, while the district court was required to consider input from defense counsel, it wasn't required to accept counsel's recommendations. *See Drope*, 420 U.S. at 177 n.13 (explaining that although trial court should consider counsel's representations regarding defendant's competency, it need not accept them); *cf. Mackovich*, 209 F.3d at 1233 ("[C]oncerns of counsel alone are insufficient to establish doubt of a defendant's competency."). Particularly in light of Osborn's ex

9

parte conversation with the district court,[5] we find no error in the district court's finding that Osborn is not presently able to assist in her defense.

Osborn also argues that the district court improperly considered whether she might file a future habeas action, which isn't relevant to Osborn's present ability to consult with her lawyer and assist in her defense. Although we agree that this consideration was irrelevant, we are satisfied that a preponderance of the evidence nonetheless supports the district court's finding that the persistent nature of Osborn's mental illness and delusions would likely interfere with her present ability to assist counsel.

Based on the entire record, we are not "left with the definite and firm conviction that a mistake has been committed." *Mackovich*, 209 F.3d at 1232 (quoting *Verduzco-Martinez*, 186 F.3d at 1211). We thus affirm the district court's competency determination and remand to the district court for further proceedings.

Entered for the Court

Per Curiam

---

[5] Osborn argues without support that the district court clearly erred in relying in part on its observations from its ex parte meeting with Osborn and her counsel. Osborn appears to suggest that the district court should not have considered Osborn's request for new counsel or the admittedly delusional comments she interjected during that request because neither occurred in open court. As the government points out, a court should consider "*any* evidence of irrational behavior by defendant" in its competency finding. *Clayton v. Gibson*, 199 F.3d 1162, 1171 (10th Cir. 1999) (emphasis added). And the district court may rely on its own observations of a defendant's conduct when determining competency. *United States v. Boigegrain*, 155 F.3d 1181, 1189 (10th Cir. 1998). We see no reason, and Osborn presents us with none, to limit the district court's observations only to conduct the district court observes in open court.

10